## HALL vs. DENCKLA et al.

STATUTE OF LIMITATIONS: *As to foreclosure of mortgages.*

While there is no statute expressly fixing the lapse of time which shall bar a suit to foreclose a mortgage, our courts of equity have adopted seven years as the period of limitation, being the length of time allowed by the statute for the mortgagor to bring ejectment to obtain possession of the land, and satisfy his debt out of the rents and profits.

SAME: *Suspended during the rebellion.*

The statute of limitations ceased to run, in this state, between the 6th day of May, 1861, and the 2d day of April, 1866, by reason of the civil war.

STATUTE OF NONCLAIM: *When not available.*

In a proceeding to foreclose a mortgage, or in any action asserting an original, specific, and absolute charge on the land, the plea of the statute of nonclaim is not available, nor is any affidavit of non-payment or justness necessary.

VENDEE: *Liable for taxes, etc.*

    On sale of lands, and title bond given, the vendee is bound to pay all tax assessments on the land after sale.

APPEAL from *Arkansas* Circuit Court.

Hon. HENRY B. MORSE, Circuit Judge.

*A. H. Garland*, for appellant.

*Clark & Williams* and *Bell & Carlton*, for appellees.

BENNETT, J.  William P. Denckla and wife, Calvin Thompson and Francis M. Scott, on the 7th day of May, 1870, filed their bill of complaint in the circuit court of Arkansas county, to enforce an expressed lien against the south half of the northwest quarter, and the west half of the northeast quarter of section seventeen in township seven, south of the base line of range 6 west of the fifth principal meridian.

The plaintiffs allege that they are the sole heirs of David Thompson deceased, who died in 1843, and that they inherited the above described lands.   On the 5th day of October, 1857, Calvin M. Thompson, acting in behalf of all the heirs, sold the land, containing 560 acres, to James M. Lyon, for the sum of three thousand and three hundred dollars, three hundred and fifty dollars of which was paid down, the balance to be paid according to the tenor and effect of three promissory notes: one for seven hundred and fifty dollars, due the first day of January, 1858; one for eleven hundred dollars, due twelve months from date, and one for like sum, due at two years, bearing interest at six per cent.   Thompson executed and delivered to Lyon his bond for title, by which he bound himself to make to Lyon a good deed to the land upon the payment, at maturity, of the note first falling due, and Lyon was to execute a mortgage on the land to secure the other two notes.

The bill further alleges that Lyon having failed to pay the

two notes first falling due, Thompson instituted suit thereon, and recovered judgment on the 25th day of April, 1859, for $1,768.80 debt, and $88.95 interest, which judgment, it is averred in the bill, "still remains in full force, and in no wise paid or discharged; and that the said last mentioned note, for $1,100, due the 5th day of October, 1859, is still wholly unpaid."

Lyon died intestate, and S. M. Morris, E. F. Morris, A. Morris, Thomas Morris and Ella Morris are his sole heirs at law.

The plaintiffs aver the tender of a deed to Lyon. On the 7th day of September, 1870, the defendants, except Ella Morris, a minor, were served with process.

At the October term, 1870, of the Arkansas circuit court, the adult defendants filed their answer. The answer set up the following defenses: First. Statute of limitations. Second. The failure to authenticate the claim before suit was brought. Third. A tax title to the land by deed by the sheriff of Arkansas county, on the 15th day of March, 1860. Fourth. And that the plaintiffs had no title to the land by inheritance.

The answer admits the transfer of the land and the giving of the notes; admits the rendition of the judgment against Lyon on the 25th day of April, 1859, but avers that more than ten years had elapsed before the commencement of the suit; also set up a forfeited delivery bond on the execution on the judgment which created a statutory judgment.

At the October term, 1871, plaintiffs filed an amended bill, in which they set up, in avoidance of the statute of limitation, the pendency of a suit of Lyon's to enjoin the collection of the purchase money for the land, which suit was still pending and undisposed of; also set up a title bond of one Mussett, in which he obligated himself to reconvey the land to David Thompson on condition stock in the western branch of the

Real Estate Bank was not awarded, and if awarded to convey the stock. This title bond of Mussett is exhibited.

The amended bill also alleges that on the 5th day of October, 1857, Lyon took possession of the land, and from that time until his death continued in possession, and since his death his heirs and administrators have had the possession and enjoyed the rents and profits of the same; and avers that Lyon was bound in law, in fact, to pay the taxes, but that he had fraudulently neglected to do so in order to get a tax title through a tax sale, and suffered the land to be sold by the collector, on the second Monday of March, 1859, and purchased the same. Also alleges that Lyon had the tax deed at the time he applied for and procured the injunction restraining Calvin M. Thompson from collecting the purchase money, on the ground of want of title, and did not set it up or rely on it.

The original answer as amended was taken as an answer to the amended bill.

At the September term, 1872, of this court, the cause was heard upon the original and amended bills, exhibits and answers and deposition of C. G. Scott, and decree for plaintiffs for $5,661.07, and in case of nonpayment, the land mentioned in the original bill was to be sold.

From this decree defendants appealed to this court.

The appellants assign several errors:

*First.* They claim that appellees are barred by the statute of limitations and of nonclaim.

*Second.* That the debt was not properly authenticated before suit was brought.

*Third.* That there was no title in plaintiffs below to the land, but that their ancestor, David Thompson, had conveyed the land to Tyru Mussett.

*Fourth.* That Lyon had bought the land for taxes on the

second Monday of March, 1859, and it being unredeemed a year thereafter, the time allowed by law for redemption, had procured a deed from the collector, which was executed March 15, 1860.

*Fifth.* That Ella Morris, a minor defendant, had not been served with process, and without such process James A. Gibson had been appointed her guardian *ad litem*, and had answered for her.

As to the first cause of error, the plea of the statute of limitation and nonclaim, we would say that when Calvin M. Thompson sold the lands to James M. Lyon, and gave him his bond for title, the transaction was in all essential features a security for the payment of the purchase money ; the same in effect as if he had made him a deed and taken a mortgage back (*Smith v. Robinson*, 13 Ark., 553), and the usual incidents of a mortgage attached to the transaction, and the rights of the parties growing out of it are to be governed by analogous rules. There is no statute expressly fixing the lapse of time which shall bar a suit to foreclose a mortgage, but our courts of equity have adopted as the period of limitation the length of time which is allowed the mortgagee to bring ejectment in order to obtain .possession of the land and satisfy his debt out of the rents and profits. This period is seven years. (See *Sullivan v. Hadley*, 16 Ark., 145 ; *Guthrie v. Field*, 21 id., 386. See, too, the principle and act of January 4, 1851, Gould's Dig , 749, for the time.)

This title bond was executed on the 5th day of October, 1857. The last note was due October 5, 1859. The bill of complaint was filed on the seventh day of May, 1870, thus more than seven years having elapsed from the time the title bond could have been enforced before suit was brought. The action is barred unless it can be shown that something has suspended the statute.

It has been held that the statute of limitations did not run during the rebellion. (See *Metropolitan National Bank of New York v. Anderson Gordon, ante,* p. 115 ; *Brown v. Hyatts,* 15 Wall., 182; *The Batesville Institute and Erwin, Adm'r v. Kauffman,* Chicago Legal News, January 31, 1874.) The question, then, is, making allowance for the suspension of time produced by the rebellion, Was the action out of season ?

In the case of "*The Protector,*" 12 Wall., 700, the United States supreme court held that the proclamation of intended blockade by the president may be assumed as marking the time of the beginning of the rebellion, and the proclamation that the war had closed as marking the time of its close. There were two proclamations of intended blockade: The first, of the 19th of April, 1861 (12 Stat. at large, 1258); the second, of the 27th of April, 1861 (same, 1259).

The state of Arkansas is not mentioned in either of these proclamations, and it was never directly blockaded in technical sense. Therefore, we cannot determine the beginning of the war by the rule adopted by the United States court, but in several decisions of this court, it has been decided there were no legal courts in Arkansas during that period, and the 6th day May, 1861, the date of the passage of the ordinance of secession, has been the time fixed as the destruction of legal tribunals. *Penn v. Tollison,* 26 Ark., 515 ; *Thompson v. Mankin,* id., 586.

There were two proclamations declaring the war had closed ; the one issued on the 2d of April, 1866, embraced the state of Arkansas. 14 Stats. at Large, 814.

Applying the rule of the United States tribunals to the case now before us, we find that the statute of limitations. ceased to run between the 6th day of May, 1861, and the 2d day of April, 1866, by reason of the civil war.

By this we do not mean to assert that there were no legal

tribunals in existence within this state previous to the 2d day
of May, 1866, but such as were organized and attempted to
exercise their functions did so at the will and pleasure of a ,
military force. Martial law (which is no law) was in the su-
premacy. A corporal with a squad of soldiers could intrude
themselves upon any court, and by his command disperse any
tribunal and take possession of records and papers and scatter
them to the four winds, and the judge, sheriff and clerk were
powerless to resist. Consequently no litigant should have
been compelled to risk important documents, the foundation
of their litigations, in the possession and custody of those
courts, though organized and proceeding under the permission
and sanction of civil law.

The time thus taken from the operation of the statute, by
the application of the above rule, not more than seven years
had elapsed from the time the cause of action accrued to the
commencement of this suit, therefore, it is not barred.

As to the question of nonclaim, we would say that this is
an action asserting an original, specific and absolute charge on
the land, and does not come within the statute. The com-
plainants do not claim a debt from Hall's administrator, but
demand the performance of a specific duty, and the case comes
clearly within the exception laid down in *Sullivan v. Hadley*,
16 Ark., 144; *Walker, Adm'r, v. Byres*, 14 id., 242; *Pope's
Heirs v. Boydad*, 22 id., 535.

The same authorities and argument which tend to show that
the case is not affected by the statute of nonclaim, also show
that no affidavit of nonpayment and justness is necessary.
Those sections of our administration laws which relate to au-
thentication before suit brought, refer alone to suits against
executors and administrators, as such, to subject the general
assets to the payment of debts. In the case at bar the admin-
istrator is only a necessary party because the real estate is in

his possession. If the administration had been completed, the action would have been maintainable against the heirs of Lyon, if they had been the holders of the specific property.

The third objection to the decree rendered in the court below is: That there was no title in the plaintiffs to the land, but that their ancestor, David Thompson, had conveyed the land to Tyru Mussett.

The record shows that on the 6th day of October, 1838, David Thompson, the ancestor of these plaintiffs, did execute a warranty deed of conveyance of these lands to Tyru Mussett, and this deed has in no manner been set aside or annulled. But these appellees assert that this conveyance was made to Mussett for a specific purpose, and that he held it as a mere trustee, and in proof of this assertion, exhibit a bond for a title given by Mussett to Thompson, executed two days afterward, which bond recites the fact " that said above enumerated tracts or parcels of land have been granted, bargained, etc., unto Tyru Mussett, and his heirs and assigns, forever, for the sum of eight thousand eight hundred dollars, upon the express condition that the same be invested in bank stock in the Real Estate bank of the state of Arkansas, and Mussett obligated himself to reconvey this land to Thompson on condition stock in the western branch of the Real Estate bank was not awarded, and if awarded to convey the stock to him."

It is alleged that Mussett did not obtain any stock in the bank, and that Thompson is now entitled to the land by reason of the trust having failed, and they submit that the trust being satisfied, it was executed by the statute of uses and the legal title by operation of law vested in Thompson.

This bond of Mussett shows that he held this land as a mere trustee, to reconvey to David Thompson upon condition that the stock in the western branch of the Real Estate bank was not awarded, and if awarded to convey the stock. The reason

33

why this transfer was made seems to have been from averments in the bill, because David Thompson desired stock in this bank, but not being a resident of certain western counties, was not one of the class of persons who was authorized to subscribe stock, under the act of the general assembly creating the western branch.   To enable him to get the stock he had conveyed these lands to Mussett, who was qualified, with the understanding that he was to get the stock and transfer the stock to Thompson.   These averments are not contradicted by the answer, and may reasonably be taken as true.

But still the fact exists that Thompson, during his lifetime, did deed these lands away, and these appellees have no legal title to them; and if the conveyance was made under such circumstances as would make it of no binding effect, or that Mussett or his heirs could not assert and claim under it, it is the duty of Thompson or his heirs to remove this cloud from their title before they can come into equity and ask for an enforcement of the collection of the purchase money due from Lyon or his representative.'   It is an established rule in equity that where the vendor has not the power to make title, the vendee may, before the time of performance, enjoin the payment of the purchase money until the ability to comply with the agreement for title is shown.

The heirs of Thompson have not shown how they can make a title.   They may make to Lyon a warranty deed, but how do they get the land themselves?   Their ancestor, under whom they claim, has deeded it away.   But they ask the court to set their conveyance aside, without making Mussett, the grantee or his heirs, a party to the suit.   This cannot be done. The allegation of the bill and the exhibits may tend to show that this deed to Mussett was for the sole purpose of creating a trust, although such instrument is an absolute conveyance in fee simple of the legal estate, yet such legal estate remains

in Mussett until removed by a reconveyance or an order of a court of equity declaring the trust satisfied. And before the appellee can demand the payment for the land from Lyon or his representative, they must remove this cloud from their title. This could have been done by making Mussett or his heirs parties to this proceeding, or by a separate action. It would be inequitable for any court to enforce the collection of the purchase money of land when no title can be given. This part of the proceeding of the court below was erroneous.

The fourth assignment of error is the tax deed of Lyon. This can be of no avail for the defendants.

The land was sold in 1859 for the taxes of 1858. Lyon bought the land and took possession October 5, 1857. By law he was bound for the taxes, and it was an attempted fraud to suffer them to be sold and to buy them in. That would be to take advantage of his own wrong. A vendee is bound to pay all tax assessments on land after sale.

But it is urged that the vendor, by terms of his bond, was bound upon payment of the purchase money, to make and execute " a good and sufficient deed, clear of all incumbrances," and that this could not be done while the taxes accruing after making the bond and before the execution of the deed remained unpaid.

These taxes, however, arose after, and were liens or incumbrances subsequent to the sale. The obligation of the vendor was to convey the property clear of any incumbrance placed thereon by himself or on his account, and not those arising on the account of the vendee. Taxes against the property existing at the time of the sale; mortgages made by the vendor, whether before or after; judgments against him or any former owner, he of course would have to meet and satisfy; but not mortgages made by the vendee, nor judgments against him or other liens created by his act, or failure to discharge his liabil

ities. The vendor is not responsible for anything done or omitted in relation to the title by the vendee, nor is he bound to covenant against liens arising by reason of his failure to discharge his duty.

As to the service on Ella Morris, the record does not show that she has been formally served as the code directs, and any decree rendered against her is null and void.

For the errors above, the decree rendered in this cause must be reversed and cause remanded, with leave to the complainants to amend their complaint and bring the heirs or representatives of Tyru Mussett before the court, and summon Ella Morris, and proceed to a final decree according to this opinion.