BUTLER v. COLSON.

Opinion delivered May 29, 1911.

SALE OF LAND—WHEN TIME NOT ESSENCE OF CONTRACT.—Under a contract for the sale of land which provides that, in the event of a failure to pay the purchase money notes when due, the conveyance shall become void, and all payments be forfeited, time is not of the essence of the contract.

Appeal from Baxter Chancery Court; *George T. Humphries,* Chancellor; affirmed.

*W. R. Jones,* for appellants.

1. When the parties to a contract of sale of lands have stipulated to make time of payment of the essence of the contract, a court of equity cannot relieve a vendee who has made default. 87 Ark. 593; *Id.* 393; 76 Ark. 578; 54 Ark. 16; 61 Ark. 266; 91 Ark. 133; 1 Pom. Eq. Jur. (2 ed.) § 455. A court of equity will not relieve against the failure of a vendee to perform a condition precedent.

2. Appellants' withdrawal of the deed from the bank was not in violation of the contract. Even if it were an escrow, they had that right when appellees failed to perform the conditions of the contract. 14 S. W. 864; 88 Ark. 604; 16 Cyc. 584, subdiv. 6 (A). When a contract of the kind here involved so provides, a grantee loses all payments which he has made thereunder by a breach of its conditions. 29 Am. & Eng. Enc. of L. 684; 5 Wall. (U. S.) 497 and authorities cited.

HART, J. This is an appeal by the defendants from a decree of the Baxter Chancery Court, decreeing specific performance of a contract for the sale of land.

On the 11th day of June, 1906, the defendants, Zella Poynter, H. C. Butler and A. V. Butler, his wife, entered into a written contract with the plaintiff, W. J. W. Colson, as follows:

"This contract, made and entered into by Zella Poynter, Henry C. Butler and A. V. Butler, his wife, parties of the first part, and W. J. W. Colson, party of the second part:

"Witnesseth: That whereas the parties of the first part have this day conveyed by warranty deed and covenant of warranty the following described property situated in the county of Baxter and State of Arkansas, towit: lot 533 in the town of

Cotter, Ark., to the party of the second part, and have this day deposited the same in escrow in the Baxter County Bank, and it is by us agreed to deliver said deed to the party of the second part upon his paying the following promissory notes to Zella Poynter in addition to the sum of $100 now paid.

"Said notes payable as follows, towit: $200 due 30 days from date, $100 due 60 days from date, and $100 due 90 days from date, and $100 due four months from date, and $100 due five months from date, and $150 due six months from date of this instrument. And it is hereby agreed that, in the event of a failure to pay any of the said notes when the same becomes due, the conveyance above mentioned is to become void and all payments having been made to be forfeited."

The plaintiff entered into possession of the lot, and paid all of the purchase price of said lot except the note for $100 due November 11, 1906, and the one due December 11, 1906. On the 23d day of November, 1906, P. T. Poynter, the husband of Zella Poynter, sent to Colson the following letter:

"Enclosed find two notes for $250, as I have taken possession of the property according to contract. I will be able to close it out in a few days."

A few days thereafter he went to the Baxter County Bank, and withdrew the deed mentioned in the above-quoted contract, and the lot in question was conveyed to W. O. Bean. W. J. Green had been in possession of the property as a tenant of Colson, but he vacated it a few days before the sale to Bean, and says he does not know who got possession when he went out. At the time of the sale to Bean the latter went into possession of the property. On December 11, 1906, Colson tendered to Zella Poynter $250, the principal of the notes due respectively November 11 and December 11, 1906, and also the accrued interest, and she refused to accept it. Colson had previously paid $600 of the purchase money, and the amount tendered was the balance due.

It is first contended by counsel for the defendants that the very essence of the contract was that the purchase money notes should be paid on or before a given day, and that the contract can not be satisfied except by payment thereof on or before the dates named in the contract. They insist that because the plaintiff did not pay the $100 note due November, 1906, on the precise

day it was due the contract was forfeited, and that to relieve the plaintiff of the forfeiture would be to deprive the defendants of an essential right under the contract.

"As a general rule, time is not deemed, in equity, to be of the essence of the contract, unless the parties have expressly so treated it, or it necessarily results from the nature and circumstances of the contract (2 Story's Eq. § 776) ; and, even in cases where it clearly appears to have been the intention of the parties to make time the essence of the contract, equity will relieve the party in default from a forfeiture if he shows sufficient excuse for nonperformance at the time specified." *Atkins* v. *Rison,* 25 Ark. 138.

This rule has been steadily adhered to, and has been applied according to the facts of the particular case in which it is invoked. We do not think time was the essence of the contract in this case. It is not made so by the express terms of the contract, as was the case in *Souter* v. *Witt,* 87 Ark. 593, and *Carpenter* v. *Thornburn,* 76 Ark. 578, relied upon by counsel for defendants. It is true that the contract contained a clause "that, in the event of a failure to pay any of the said notes when the same became due, the conveyance above mentioned is to become void, and all payments having been made to be forfeited." This was but the legal effect of the contract without the clause referred to. By the previous terms of the contract, the deed was not to be delivered until all the notes given for the purchase price were paid. Colson went into possession of the property under the contract; and, if he had made default in his payments, and the defendants had been compelled to bring ejectment to gain possession of the premises, Colson would not have been entitled to recover payments previously made.

It will be noted, too, that the contract did not contain a provision for delivery of possession of the premises by Colson in case he made default in the payments.

It is next insisted that the parties treated the time of payment of the essence of the contract. On this point, P. T. Poynter testified that plaintiff came to see him on the 10th day of November, 1906, and said that he had the money, but that he had other obligations to perform that were of more importance to him than the property in question. That he refused to pay the note due on

the next day, and remained in Cotter until the following Sunday, trying to sell the property.   That plaintiff tried to sell it to W. O. Bean, and on the 15th of November, 1906, or at any rate on the Saturday following, plaintiff told him that he could not sell it and turned the keys over to him.   That plaintiff told him he would have to take the property back, and that he did so.   That he afterwards sold the property to W. O. Bean.

On cross examination Poynter testified that the trade between Colson and Bean was called off on the 17th day of November, 1906, and that his wife sold to Bean a few days thereafter.

W. O. Bean testified that Colson offered to sell him the lot for $300 subject to Green's contract.  Green was the tenant of Colson, and had an option to purchase the lot.   Bean says that he told Colson that he would not take it because he could not deliver possession to him, and that Colson then told him that he would have to let it go back to Poynter because he could not pay for it. That a day or two after this Colson told him that he had let Poynter take the lot back.· That two or three days after this Poynter offered to sell the lot to him, and that he purchased it for $350.   On cross examination, he stated that Colson offered to sell him the property $50 cheaper than Poynter did.   That this offer by Colson was two or three days before his trade with Poynter.   That he made the trade with Poynter with his eyes open, but not in an attempt to beat Colson, as he had told him that he had turned the property back to Poynter because he could not pay for it.

Colson denies that he turned the property back to Poynter, and denies that he told Bean that he had turned the property back. He testifies that on December 11, 1906, he went to Zella Poynter and tendered her the balance due, $250 and the accrued interest, and that she refused to receive it.

Counsel for defendants now contend that the contract was forfeited on the 11th day of November, 1906.   It is apparent from Poynter's own testimony that he did not so treat the contract; for he admits that after that date Colson was trying to sell the property for the purpose of paying the balance of the purchase money.   He knew that Colson was endeavoring to sell the property to Bean after November 11, 1906, for the purpose of paying the balance of the purchase, and it is obvious that he was not

then insisting on a forfeiture. The chancellor found that Colson did not return the property back to Poynter, and that Bean purchased it with notice of Colson's equities. We do not think his finding was against the weight of the evidence, and the decree will be affirmed.