WHITE *v.* PAGE.

4-9075                                          226 S. W. 2d 973

Opinion delivered February 13, 1950.

Rehearing denied March 13, 1950.

*Bland, Kincannon & Bethell,* for appellant.

*Alfred J. Hall* and *Gean & Gean,* for appellee.

Ed. F. McFaddin, Justice. Appellant, Mrs. Addie White, filed suit, seeking to rescind a contract between herself and Mr. and Mrs. Page, and recover $1,250 which she claimed she had paid. The Chancery Court dismissed the complaint for want of equity, and this appeal challenges the correctness of that decree.

## FACTS

Mr. and Mrs. Roland Page owned, in Fort Smith, a house and lot mortgaged to Mrs. Bertha Crandall, Trustee, for a balance of $6,700.16, payable at the rate of $50 per month. The Pages occupied the front apartment of the house, and the rear apartment was occupied by a tenant. On August 30, 1948, the Pages contracted to sell the property to Mrs. Addie White, for a total consideration of $8,750.16 which was to be handled as follows:

$1000.00 Cash to the Pages on the signing of the contract.

$6700.16 Assumption of the Crandall mortgage.

$1050.00 Balance to be paid to the Pages in monthly installments of $100.00 beginning October 1, 1948.

The sellers retained possession of the property until October 1, 1948, at an agreed credit of $50. No deed was to be delivered to Mrs. White until she had fulfilled the said contract, which provided, *inter alia:*

"Until the obligations of this contract have been performed by the buyer, she agrees to maintain and pay for premiums on the fire and tornado insurance on improvements on said property in the sum of $7,750 . . . and the buyer is to pay all general taxes and assessments for local improvements coming due subsequent to this date." (These same requirements were contained in the Crandall mortgage.)

The contract also contained the following forfeiture clause:

"Should the buyer herein fail to carry out the terms and conditions of the contract with said Trustee, or should the said buyer default in any two or more of the above monthly payments, then, at the option of the sellers herein, the entire balance due them shall immediately become due and payable, and if not paid within ten days, all rights of the said buyer, and payments made under this contract, shall be forfeited, and this agreement become null and void."

On October 1, 1948, the Pages paid Mrs. White $50 for rent, and made arrangements with her to continue to occupy the front apartment at $35 per month; which they paid to her for several months. Mrs. White also collected in cash the rent of $35 a month from the tenant in the other apartment. But Mrs. White, after repeated demands, failed to pay the fire insurance premium of $42 as well as payments on the Crandall mortgage due in December and January and thereafter. Furthermore, Mr. Page gave Mrs. White $40.95 to pay the current taxes and these she also failed to pay. Mrs. Page testified as follows:

"Q. Did you have a conversation with Mrs. White concerning whether or not she was going to carry out the contract with you and your husband on or about the 1st of November of last year?

A. Yes sir. I called her at Charleston, Arkansas, and told her we needed our money; that we had bills to pay and she said she didn't intend to pay us any more until she sold the house.

Q. Did she pay any more?

A. No sir.

Q. That was about the 1st of November of 1948?

A. Yes sir, just a little after that.

Q. Do you know whether or not she collected rents off of this property after you had this telephone conversation?

A. She collected on the back apartment until January 31st. She collected for the month of January.'' Mrs. White made no payments to the Pages after the above mentioned conversation; and on January 5, 1949, the Pages sent Mrs. White (she was then in Oklahoma) a registered letter reading:

''Since you have failed to pay insurance, and failed to pay Mrs. Crandall on her mortgage, and you have failed to make the three last payments of $100 each due us on your contract with us concerning Lot 5, Block 74, Original City of Fort Smith, Arkansas, you are advised that if you do not pay the entire balance of said contract within ten days from the receipt of this letter all your rights under said contract shall be forfeited and said contract void.''

Mrs. White received the letter but made no payments in response to it; and in February, 1949, the Pages—after paying all the delinquencies on the Crandall mortgage, as well as the insurance premium and the taxes—sold the property to Mrs. Mary Owens for a total consideration of $7,661.43, being calculated as follows:

Amount of Crandall mortgage and interest..............$6561.43
Cash to Mr. and Mrs. Page .......................................$1100.00

When there are considered the taxes, insurance, and Crandall payments, which the Pages had to pay on account of Mrs. White's delinquency, it becomes evident that the Pages actually received less money by selling the property to Mrs. Owens than they would have received if Mrs. White had fulfilled her contract.

On April 13, 1949, Mrs. White filed this suit in the Chancery Court, claiming that the Pages had breached their contract with her by (a) remaining in the front apartment after October 1st, and (b) conveying the property to Mrs. Mary Owens in February, 1949. Mrs. White sought recovery of $1,250 which she claimed was the total of the amount she had paid the Pages and Mrs. Crandall. Mrs. Mary Owens was made a party defendant, and she answered, claiming that she bought the property from the Pages in good faith and for

value. In their answer the Pages stated that Mrs. White had breached the contract, and they had availed themselves of the forfeiture provision recited in it. The case was heard *ore tenus*, and the facts developed as above stated; and the Chancery Court entered a decree dismissing Mrs. White's complaint for want of equity. Mrs. White has appealed.

## OPINION

Mrs. White alleged that the Pages had breached the contract in two instances: (I) they remained in possession of the front apartment after October 1st; and (II) they conveyed the property to Mrs. Owens in February, 1949.

I. *Possession.* As to this, little need be said. Mrs. White made an agreement with the Pages that for a monthly rental of $35 they could remain in the front apartment after October 1st. They settled with her for such rental by selling her some of their furniture, and by crediting her indebtedness to them. Under such circumstances, Mrs. White cannot be heard to say that the Pages breached the contract by remaining in possession.

II. *The Conveyance to Mrs. Owens.* The Pages did not breach their contract by making a deed to Mrs. Owens, if in fact they had a right to forfeit the Page-White contract. Stated in its simplest terms, the issue is this: if the forfeiture clause in the contract be valid, then under the facts did the Pages have a right to forfeit the contract with Mrs. White? Learned counsel for appellant contends that the contract between Mrs. White and the Pages was a Bond for Title and that she became an equitable mortgagor of the premises, and that her rights could only be terminated by a foreclosure in equity; and in support of such contention we are cited to these cases: *Smith* v. *Robinson,* 13 Ark. 533; *Hall* v. *Denckla,* 28 Ark. 506; *Holman* v. *Patterson's Heirs,* 29 Ark. 357; *Robertson* v. *Read,* 52 Ark. 381, 14 S. W. 387, 20 Am. St. Rep. 188; *Corcorren* v. *Sharum,* 141 Ark. 572, 217 S. W. 803; *Robbins* v. *Fuller,* 148 Ark. 173, 229 S. W. 8; *Judd* v. *Rieff,* 174 Ark. 362, 295 S. W. 370.

If the contract here were a "Bond for Title"—as that expression is used in the cited cases—then there would have to be a foreclosure in this case. We conclude, however, that the contract between the Pages and Mrs. White is not the equivalent of a Bond for Title, but is a mere executory contract with a forfeiture clause and that because of her defaults Mrs. White's interest was forfeited under the provisions of the contract. We have many cases recognizing that a purchaser's rights under an executory contract affecting real estate may be forfeited pursuant to the contract and without proceedings in law or equity. Some such cases are: *Ish* v. *Morgan,* 48 Ark. 413, 3 S. W. 440; *Souter* v. *Witt,* 87 Ark. 593, 113 S. W. 800, 128 Am. St. Rep. 40; *Friar* v. *Baldridge,* 91 Ark. 133, 120 S. W. 989; *Three States Lumber Co.* v. *Bowen,* 95 Ark. 529, 129 S. W. 799; *Wade* v. *Texarkana Building & Loan Association,* 150 Ark. 99, 233 S. W. 937.

In *Ish* v. *Morgan, supra,* Chief Justice Cockrill said of the contract there involved:

"The vendee here has in effect agreed that his rights shall depend upon the scrupulous adherence to the engagement he made . . ."

In *Three States Lumber Company* v. *Bowen, supra,* Chief Justice McCulloch said:

"While equity will not. ordinarily enforce forfeitures, still, where the payment of the price of the land is by express letter of the contract made a condition upon which the sale depends, courts of equity will not refuse to follow the terms of the contract; for to fail to do so would be to make a contract for the parties which they had not made themselves."

It is therefore clear that our cases recognize the potential validity of a forfeiture clause in an executory contract for the sale of land.

In *Friar* v. *Baldridge, supra,* there was involved a contract for the sale of land, and the contract contained a forfeiture clause. Mr. Justice Frauenthal, speaking for the Court, said:

"Parties may enter into a valid contract relative to the sale of land whereby they may provide that time of payment shall be of the essence of the contract, so that the failure to promptly pay will work a forfeiture. *Ish* v. *Morgan,* 48 Ark. 413; *Quertermous* v. *Hatfield,* 54 Ark. 16, 14 S. W. 1096; *Block* v. *Smith,* 61 Ark. 266, 32 S. W. 1070. But the final effect of such an agreement will depend on the actual intention of the parties, as evinced by their acts and conduct; and such a breach of the contract as would work a forfeiture may be waived or. acquiesced in. The law will strictly enforce the agreement of the parties as they have made it; but, in order to find out the scope and true effect of such agreement, it will not only look into the written contract which is the evidence of their agreement, but it will also look into their acts and conduct in the carrying out of the agreement, in order to fully determine their true intent."

The contract in the case at bar did not state in express words "time is of the essence"; but our cases hold that evidence may establish such fact in the absence of a specific statement in the contract. In *Three States Lumber Company* v. *Bowen, supra,* we quoted with approval from *Cheney* v. *Libby,* 134 U. S. 68, 10 S. Ct. 498, 33 L. Ed. 818:

"Time may be made of the essence of the contract 'by the express stipulations of the parties, or it may arise by implication from the very nature of the property or the avowed objects of the seller or the purchaser.' "

In the case at bar the contract required Mrs. White (1) to keep the property insured, (2) to promptly pay the taxes, and (3) to make the payments on the Crandall mortgage promptly as they became due. These three matters were essential and "time was of the essence" as to them: a fire occurring during lapsation of insurance might destroy most of the security and leave no funds for re-building; failure to pay taxes might lead to loss of all the property; and Mrs. Crandall testified that she *insisted* that the monthly payments be promptly made on her mortgage. So we reach the conclusion

that "time was of the essence" as to these three matters, even though it was not "of the essence" as to the payments to the Pages. This latter is true because of the holding in such cases as *Butler* v. *Colson,* 99 Ark. 340, 138 S. W. 467; *Smith* v. *Berkau,* 123 Ark. 90, 184 S. W. 429; and *Feibelman* v. *Hill,* 141 Ark. 297, 216 S. W. 702.

We therefore conclude that the Page-White contract was not a Bond for Title; that the forfeiture clause was valid; that the Pages had a right to declare Mrs. White's interest to be forfeited for failure to pay the insurance premiums, the taxes, and the installments on the Crandall mortgage; and that the Pages acted fairly and reasonably and reaped no excessive profit from the forfeiture and subsequent re-sale to Mrs. Owens. Therefore the decree is affirmed.