Richard ABSHIRE and I. E. MOORE, Trustee for I. E.
Moore Trust No. 1 *v.* Lewis W. HYDE, Jr., Kandy K. HYDE,
and James B. McDOUGAL

CA 84-155                                   679 S.W.2d 214

Court of Appeals of Arkansas
Division II
Opinion delivered November 7, 1984

*Dewey Moore,* for appellants.

*McHenry & Skipper,* by: *Robert McHenry,* for appellees.

TOM GLAZE, Judge. This case involves two parcels of land located in western Little Rock. These parcels were the objects of several purchase agreements: (1) In February, 1975, and March, 1976, appellee James B. McDougal sold them to appellant Richard Abshire, (2) on July 11, 1980, Abshire contracted to sell the parcels to appellee Kandy Hyde, and (3) on May 21, 1981, McDougal agreed to convey title to the parcels to Kandy Hyde if Abshire defaulted on his earlier agreements with McDougal. In September, 1982, Kandy Hyde and her husband filed a quiet title action alleging, among other things, that Abshire had defaulted on his agreements with McDougal, that McDougal subsequently had conveyed the subject parcels to the Hydes and that Abshire's purchase agreement with McDougal constituted a cloud on the Hydes' title and such cloud should be removed by the court. Abshire answered and counterclaimed, setting forth certain defenses and claims against the Hydes and also filed a third-party complaint against McDougal, requesting the court to set aside McDougal's conveyance to the Hydes. Finally, appellant I. E. Moore, Trustee, intervened claiming a security interest in the subject lands by virtue of an assignment agreement he had with Abshire. After the parties denied each others' claim and all issues were joined and tried, the trial judge entered judgment in favor of the Hydes. Both Abshire and Moore bring this appeal, urging that the trial court erred in not voiding McDougal's agreement with the Hydes and in failing to recognize and enforce their interests in the parcels. We find the court was correct and therefore affirm.

Before discussing further details surrounding those transactions outlined above, we note that appellants' argument is largely premised on their belief that the May 21, 1981, agreement between McDougal and Kandy Hyde was improper and contrary to Arkansas law. On this point, we must disagree. Appellants rely on the rule anounced in *Lewis* v. *Boskins,* 27 Ark. 61 (1871), wherein the Court held:

A person in possession, under an executory contract of purchase, buying in a better title than his vendor's, can derive no advantage from it against the vendor, and the same will inure to the benefit of the vendor under whom he entered, and all that he can conscientiously demand is the sum he paid for the better title, with interest.

Applying the foregoing rule, appellants argue that Kandy Hyde was in possession of the parcels by virtue of her purchaser's agreement with Abshire and that the Hydes could not later disregard her obligation to Abshire by buying title to these same properties from McDougal, Abshire's vendor. First, we note the *Lewis,* case was a bond for title case, which is significantly different than what we have before us. Here, we are confronted with executory contracts containing forfeiture clauses. *See White* v. *Page,* 216 Ark. 632, 226 S.W.2d 973 (1950). McDougal sold the parcels to Abshire under two purchase agreements dated February 8, 1975, and March 15, 1976, for a total of $48,000. In July, 1980, Abshire by purchase agreement sold these lands to Kandy Hyde for $95,000. In both the sales from McDougal to Abshire and from Abshire to Kandy Hyde, the agreements made time of the essence and, in addition, provided in pertinent part as follows:

[I]f BUYER defaults in the payment of any installment of principal and interest for a period of 60 days, or fails to pay any taxes, assessments or insurance premiums when due, SELLER, at its option, may either declare the entire debt with interest due and payable, or rescind this AGREEMENT, and in the event of rescission all moneys paid by BUYER shall be taken and retained by SELLER, not as a penalty, but as rent of the property and of the relation of the parties thereafter shall be that of landlord and tenant . . . and thereupon SELLER, after notice, may demand possession of the property, and BUYER agrees to surrender immediately peaceable possession. No delay in the exercise of any of the options herein shall be construed as a waiver of such right, but same may be exercised at any subsequent time.

Our appellate courts have upheld the type agreements employed by the parties here, recognizing that a purchaser's rights under an executory contract affecting real estate may be forfeited pursuant to the contract and without proceedings in law or equity. *See, e.g., White* v. *Page, supra; Triplett* v. *Davis*, 238 Ark. 870, 385 S.W.2d 33 (1964).

The trial court found in the instant case that on November 1, 1981, Abshire defaulted on his payment to McDougal, who, more than sixty days after the default, revoked his agreement with Abshire under the terms of their prior purchase agreements. If McDougal had sold the properties to Abshire under a bond for title — rather than an executory contract with a forfeiture clause — McDougal would have been required to foreclose Abshire's equity of redemption. *See Fairbairn* v. *Pofahl*, 144 Ark. 313, 222 S.W. 16 (1920). Because the McDougal/Abshire sale agreements included forfeiture clauses, no foreclosure action was required when Abshire defaulted. *See White* v. *Page* at 637, 226 S.W.2d at 975. Accordingly, when McDougal elected to revoke their agreements, Abshire had no title, equitable or legal, under which Kandy Hyde held possession to the lands in question.

A closer question presented in this appeal is whether McDougal by his actions waived both Abshire's contract breach and as a consequence, the forfeiture clause contained in the contracts. This issue requires a more detailed review of the facts. Abshire's agreement with Kandy Hyde called for her to pay a $25,000 payment on November 1, 1980, with her monthly payments to commence on the same date. After this agreement was made, Abshire and McDougal modified their earlier agreements, making Abshire's two payments, *i.e.*, $7,500 and $28,500 respectively, due on November 1, 1980 —the same date Kandy Hyde was to pay $25,000 — and on November 1, 1981. Abshire also assigned McDougal a security interest in Kandy Hyde's note in the amount of $36,000. On November 1, 1980, both Kandy Hyde and Abshire defaulted on their payments, but neither McDougal nor Abshire took any legal action at that time. On January 2, 1981, Abshire assigned his remaining interest in the Kandy Hyde note to appellant Moore for a loan of $20,000, but

Abshire used none of this loan to pay McDougal. This assignment to Moore was made without notice to McDougal and Kandy Hyde. The record reflects that Kandy Hyde paid Abshire the $25,000 on or before July, 1981, but that sometime earlier, Kandy Hyde's attorney had voiced concern to Abshire about whether Abshire had the ability to pay McDougal his $36,000. Because of this concern, Kandy Hyde entered into the May 21, 1981, agreement with McDougal wherein he promised to convey title to the parcels to Kandy Hyde *in the event* Abshire defaulted in his payments to McDougal. As consideration for this agreement, Kandy Hyde paid McDougal the $7,500 partial payment Abshire had failed to pay on November 1, 1980. Kandy Hyde's attorney suggested this transaction because Kandy had possession of the properties only by virtue of her purchaser's agreement with Abshire; if Abshire defaulted, Kandy was fearful she could not receive title to the lands. Her fear was realized — Abshire again defaulted on his November 1, 1981, payment to McDougal.

Although it is undisputed that Abshire was in default, Moore and Abshire contend that they never received any notice that McDougal intended to revoke the McDougal/Abshire agreements and that the sixty-day grace period under their agreements should be extended because of the actions after Abshire's default of the Hydes and, particularly, of McDougal. Appellant cites *Berry* v. *Crawford*, 237 Ark. 380, 373 S.W.2d 129 (1963), in support of this proposition, but it is inapposite. In *Berry,* the contract provided that the seller had to make a demand on the buyer after the due date — here, no such notice was required. In fact, in his promissory note executed at the time of his September 11, 1980, modification agreement with McDougal, Abshire waived presentment for and notice of payment. Nonetheless, we believe the record sufficiently reflects Abshire was fully aware that McDougal intended to revoke their prior agreements if Abshire defaulted. Appellants' contentions are contrary to the trial court's findings, and from our review of the record, we are unable to conclude the court was clearly erroneous.

The court found that McDougal gave notice of revocation of his agreement with Abshire and after sixty days,

revoked the agreement. McDougal signed a revocation agreement on January 7, 1982, the same date that he deeded the parcels to the Hydes. Kandy Hyde's attorney testified that he had advised Abshire of his default, and he believed he had told Abshire that he had a sixty-day grace period. Hyde's counsel said that Abshire responded, "he could make the payment." Abshire was not heard from after January 1, 1982. However, Moore's attorney did contact McDougal and Kandy Hyde's attorney, indicating Moore's interest in protecting Abshire's position. When these contacts were made is unclear. In a conversation with Moore's attorney, McDougal expressed his uncertainty about his legal position if Moore chose to pay Abshire's debt, especially in view of McDougal's May 21, 1981, contract with Kandy Hyde. Moore's attorney later discussed the matter with Kandy Hyde's attorney, but Hyde's attorney testified he did not recall the mention of Moore's name; nor did he recall any offer by Moore to buy Abshire's interest.

Although there is conflict in the testimonies regarding dates and what was said between the parties during November and December, 1981, the sixty-day grace period, it is clear that Moore never tendered the monies due on Abshire's obligation to McDougal until after February 1, 1982. From our study of the record, we are unable to conclude that Abshire was not properly notified of McDougal's election to revoke their prior agreements; nor can we find McDougal (or the Hydes) waived or somehow extended the sixty-day grace period which was a part of the Abshire/McDougal agreements. Because we find the trial court's findings and conclusions are supported by the preponderance of the evidence, we affirm.

Affirmed.

CRACRAFT, C.J., and CLONINGER, J., agree.