Mark HARNESS *v.* Buddy CURTIS
and Rose CURTIS

CA 03-1437                                    192 S.W.3d 267

Court of Appeals of Arkansas
Division II
Opinion delivered September 22, 2004

*Daniel Murray Traylor*, for appellant.

*Kristi A. Mattes*, for appellee.

JOSEPHINE LINKER HART, Judge. Appellant, Mark Harness, appeals from the circuit court's decision granting appellees, Buddy Curtis and Rose Curtis, possession of real property and awarding them damages in the amount of $5,000 after concluding that appellant, as the purchaser, materially breached the parties' contract. He also appeals from the circuit court's denial of his claim for the damages that resulted from his wrongful dispossession. We hold that the trial court erred in enforcing a forfeiture of appellant's contractual rights, in awarding damages to appellees, and in refusing to award damages to appellant.

On November 17, 1994, the parties entered into a contract in which appellant agreed to purchase, for $35,000, a tract of real property on which a doublewide mobile home, a "body shop" garage, and a storage shed were located. Appellant paid $5,000 in cash and agreed to pay the balance of $30,000 in monthly install-ments of $295.15. The parties agreed that time was of the essence and that, "if [appellant] default[ed] in the payment of any install-ment of principal and interest for a period of thirty (30) days," or violated any of the other covenants, appellees could either declare the entire debt due and payable or rescind the agreement. Further, the agreement provided that upon recission of the agreement, all money paid by appellant would be retained by appellees as rent, and after notice, appellees could demand possession of the prop-erty. The parties also agreed that the "agreement shall not be sold, transferred or assigned without written consent of [appellees], and in the event of any sale, assignment or transfer, without written consent, [appellees] shall have the right to exercise the options herein before provided...." Appellant agreed that he "shall not commit or permit waste; and shall maintain the property in as good condition as at present," and "[u]pon any failure so to maintain, [appellees] may cause reasonable maintenance work to be per-formed at the cost of [appellant]."

For the first time in seven years, appellant was eight days late with a monthly payment in December 2001. On December 9, 2001, appellees had the sheriff serve appellant with a notice to

vacate the property within ten days. On January 14, 2002, appellees filed an unlawful-detainer complaint alleging that appellant had agreed to make monthly payments on the first of each month "with no grace period" and that appellant had breached the agreement by failing to make the December 1, 2001, payment and by committing waste upon the property. Appellant filed a counterclaim requesting damages for wrongful dispossession.

At a preliminary hearing held February 19, 2002, appellee Buddy Curtis testified that appellant had always made his payments on time but, in December 2001, no payment was forthcoming. He said that on the ninth or tenth of December, he went to the residence to see what had happened and observed that appellant "had turned the place into a junk yard...." He testified that there were thirty-five to forty vehicles parked on the property and that there was "trash everywhere." He learned that appellant was in jail and that appellant's daughter, Melissa Davis, and his brother, Richard Harness, were present on the premises. He told Richard that the agreement "was void." Richard gave him a copy of a "contract" between Richard and appellant that provided that, on October 1, 1996, appellant had sold to Richard "1 parcel of land at 5324 Wordsmith Trail, North Little Rock[,] Ark[.]" with the "property measuring 90 ft. length by 30 ft. width lying on the east side of garage for the sum of $2,500.00." Curtis testified that, although the parties' agreement provided that appellant was not supposed to "sell anything," he had "sold something." At this hearing, the circuit court concluded that appellees had established a prima facie case of unlawful detainer and issued a writ of possession, with a trial to be held on a later date.

At the June 28, 2002, trial, the court considered testimony given at the earlier hearing and heard additional testimony. On cross-examination, Mr. Curtis admitted that the agreement was prepared by his attorney. He also admitted that, according to the contract, appellant had until the end of December 2001 to make the December payment. He also admitted that he had not asked appellant to clean up the property because he "no longer wanted to be associated with" appellant.

Following the hearing, the judge ruled that there was an enforceable land-sale contract and that appellant had breached it. When asked to specifically state his findings of fact and conclusions of law, he said that the conveyance to Richard in October 1996 and the late payment were breaches of the contract. The court's written order provided that appellant had materially breached the

contract, that the funds paid by appellant would be considered rent for the period that appellant had occupied the property, and that appellees were entitled to remain in possession of the property. The order awarded appellees $5,000 for damages to the property and $350 in attorney's fees. This appeal followed.

The standard that we apply when we review a judgment entered by a circuit court after a bench trial is well established. We do not reverse unless we determine that the circuit court erred as a matter of law or we decide that its findings are clearly against the preponderance of the evidence. *Riffle v. United Gen. Title Ins. Co.*, 64 Ark. App. 185, 984 S.W.2d 47 (1998).

Appellant argues on appeal that the trial court erred in: (1) awarding possession of the property to appellees; (2) awarding damages in the amount of $5,000 to appellees for repairs they made to the property after appellant was ejected; (3) refusing to award appellant damages that he sustained as a result of his wrongful dispossession of the property. We agree with appellant on all points.

■ Appellant contends that the trial court should have treated the contract as a mortgage giving him an equity of redemption. We need not address that issue, however, because appellant did not sufficiently breach the agreement to warrant forfeiture of his rights thereunder. When performance of a duty under a contract is contemplated, any nonperformance of that duty is a breach. *Zufari v. Architecture Plus*, 323 Ark. 411, 914 S.W.2d 756 (1996). However, a relatively minor failure of performance on the part of one party does not justify the other seeking to escape any responsibility under the terms of the contract. *Vereen v. Hargrove*, 80 Ark. App. 385, 96 S.W. 3d 762 (2003). Although appellant failed to make a payment on December 1, 2001, that was not a material breach under the terms of the parties' agreement, as the contract did not give appellees the right to declare a default until thirty days without payment had passed. By serving appellant with a notice to vacate on December 9, appellees committed the first material breach of the agreement, which released appellant from his contractual obligations. *See Vereen v. Hargrove, supra.*

■ Moreover, while Arkansas's appellate courts have upheld forfeiture clauses in executory land sale contracts, *see Abshire v. Hyde*, 13 Ark. App. 33, 679 S.W.2d 214 (1984), a court may refuse to enforce a forfeiture provision in a land contract when there are

substantial equitable circumstances. *See Hatfield v. Mixon Realty Co.*, 269 Ark. 803, 601 S.W.2d 894 (Ark. App. 1980). The right of forfeiture can be a harsh remedy producing great hardships, and therefore, before a forfeiture is enforceable, equity requires strict compliance with the important terms of the contract even where there is an express provision for forfeiture. *Triplett v. Davis*, 238 Ark. 870, 385 S.W.2d 33 (1964). Appellees did not substantially comply with the default provision of the contract when they declared a default and served appellant with notice to vacate only eight days after the payment was due.

■ Appellant also contends that the trial court clearly erred in finding that appellant's purported conveyance of property to Richard breached the agreement between appellant and appellees. We agree. According to the document memorializing the conveyance, appellant sold Richard a parcel of land. The agreement between appellant and appellees, however, provided that the *"agreement* shall not be sold, transferred or assigned without written consent." (Emphasis added.) Here, appellant clearly did not sell, transfer, or assign the agreement to Richard; instead, he purportedly sold a small portion of the land to Richard. Given the plain language of the agreement, we conclude that the trial court clearly erred in finding that appellant breached the parties' agreement when he executed a document purporting to sell to Richard a small portion of the land.

■■ We also note that, by awarding damages to appellees, the trial court obviously believed that appellant committed waste on the property. Our review of the evidence, however, leads us to conclude that a finding to that effect would be clearly against a preponderance of the evidence. The contract provided: "Buyer shall not commit or permit waste; and shall maintain the property in as good condition as at present, reasonable wear and tear excepted." Here, Mr. Curtis testified that appellees had spent $5,394.34 to repair the property. Appellees' daughter, Tina Tendall, also testified about the repairs. Although Mr. Curtis and Ms. Tendall testified extensively about the state of the property after appellant's eviction, other than describing it as "very nice," they presented no specific evidence of its condition at the time appellant took possession of it. Without such proof, we cannot say that the residence actually deteriorated, in excess of normal wear and tear, during the term of the contract. In *O'Kane v. O'Kane*, 117

Ark. 33, 173 S.W. 821 (1915), the court explained that waste involves the destruction or removal of buildings, the carrying away of the soil, the cutting of ornamental or sheltering trees and shrubs, and the cutting of saplings and timber. Here, there is no evidence of any kind of destruction to the property, and therefore, we cannot say as a matter of law that the unsightly presence of thirty or forty vehicles on this property amounted to waste.

■ In light of appellant's history of timely payments and appellees' material breach of contract in prematurely declaring default, we reverse the trial court's forfeiture of appellant's contractual rights. We order the contract reinstated and direct that, on remand, the trial court award possession of the property to appellant.

■ We also reverse the trial court's award of $5,000 to appellees for damages on the ground that appellant caused or permitted waste on the property. When the damages to the property are capable of repair, restoration costs are a recoverable element of damages for temporary damage done to the property. *State v. Diamond Lakes Oil Co.*, 347 Ark. 618, 66 S.W.3d 613 (2002). When injury to real property is temporary, the measure of damages is the cost of restoring the property to the same condition that it was in prior to the injury. *Id.; see also* Howard W. Brill, *Arkansas Law of Damages* §§ 30-1, 30-2 (4th ed. 2002). In our view, there was a failure of proof that the repairs performed by appellees were more than normal wear-and-tear damages to a mobile home that was twenty to forty years old. Therefore, we reverse the award of damages awarded to appellees.

■ Appellant also argues that, because he was wrongfully dispossessed of the property, the circuit court erred in failing to award him damages pursuant to Ark. Code Ann. § 18-60-311 (Repl. 2003). Again, we agree and remand for the circuit court to determine the damages that he sustained as a result of the wrongful dispossession.

Reversed and remanded.

STROUD, C.J., and VAUGHT, J., agree.