FRIAR *v.* BALDRIDGE.

Opinion delivered June 21, 1909.

1. SALES OF LAND—TIME OF PERFORMANCE.—Parties may enter into a valid contract relative to the sale of land whereby they may provide that time of payment shall be of the essence of the contract, so that failure to pay promptly will work a forfeiture.  (Page 136.)

2. SAME—CONSTRUCTION—EVIDENCE.—Whether a contract for the sale of land contemplated that there should be a forfeiture for failure of the vendees to pay promptly will be ascertained not only from the written contract but also from the acts and conduct of the parties in carrying out the agreement.  (Page 137.)

3. SAME—FORFEITURE—WAIVER.—Where there has been a breach of a contract of sale of land sufficient to cause a forfeiture, and the party entitled thereto either expressly or by his conduct waives the forfeiture or acquiesces in the breach, he will be precluded from enforcing the forfeiture.  (Page 137.)

4. SAME—WHEN FORFEITURE WAIVED.—When the conduct of a vendor was such as to lead the vendee to believe that he would not insist upon a forfeiture under the contract, he will be held to have waived it.  (Page 139.)

5. STATUTE OF FRAUDS—SALE OF EQUITABLE INTEREST IN LAND.—The statute of frauds, § 3654, subdiv. 4, providing that "no action shall be brought to charge any person upon any contract for the sale of lands,

tenements or hereditaments, or any interest in or concerning them," unless the agreement is in writing, signed by the party to be charged therewith, applies to the sale of an equitable interest in lands. (Page 139.)

6. SAME—ORAL AGREEMENT TO RESCIND LAND SALE.—An oral agreement to rescind a contract for the sale of land, entered into after some payments have been made and others are due, will be held to be within the statute of frauds unless followed by an actual abandonment of the sale by both parties and a restoration of the property to the vendor. (Page 139.)

7. TENANCY IN COMMON—POWER OF COTENANT.—One tenant in common cannot bind his cotenant by an unauthorized agreement in respect to the common property. (Page 141.)

Appeal from Logan Chancery Court, Northern District; *J. Virgil Bourland,* Chancellor; affirmed.

*Robert J. White,* for appellant.

1. Time was of the essence of the contract. A waiver of forfeiture by Friar is not established by the evidence, and is contradicted by the conduct of the parties. Payment at the time specified was a condition precedent to the right to purchase, which right terminated on failure to make such payment. 76 Ark. 579; 54 Ark. 16; 57 L. R. A. 176; 17 N. E. 60; 21 S. W. 970; 45 S. W. 275; 17 N. E. 61; 14 Tex. 373; 113 S. W. 800.

2. A written contract for the sale of land may be rescinded by parol. 151 Pa. St. 561; 25 Ala. 92; 86 Miss. 669; 13 L. R. A. 633; 47 Ala. 714; 4 Cal. 315; 10 Ind. 223; 13 Abb. N. C. (N. Y.) 340; 43 Vt. 592; 44 N. W. 835; 88 N. W. 54; 23 Cent. Dig., § 100, tit. Frauds, St. of; 20 Cyc. 219; 55 Ark. 73.

3. Appellees cannot enforce specific performance over their agreement to rescind the contract. 13 L. R. A. 633; 6 *Id.* 652; 57 *Id.* 176.

Appellees, *pro se.*

1. It is the chancellor's finding that appellant "extended the time orally and by various other acts waived said time," and the evidence sustains such finding. He cannot insist on a forfeiture. 87 Ark. 593, and cases cited.

2. If Baldridge did make a verbal contract with Friar to sell the land back to him, it falls within the statute of frauds and can not be enforced. Kirby's Dig., § 3645; 1 Ark. 391; 15

Ark. 322; 16 Ark. 271; 30 Ark. 249; *Id.* 390; 41 Ark. 264; 54 Ark. 519.

FRAUENTHAL, J.   On September 3, 1904, the parties to this litigation entered into a written contract for the sale and rent of a tract of land by William Friar, the defendant below, to F. V. Baldridge and W. A. Baldridge, the plaintiffs below.   The portions of said contract which are material to the determination of the rights of the parties herein are as follows:

"CONTRACT OF SALE AND RENT.

"This contract made this 3d day of September, 1904, between Wm. Friar, party of the first part, and F. V. Baldridge and W. A. Baldridge, parties of the second part, witnesseth that, in consideration of the stipulation hereinafter contained, and the payment to be made as hereinafter specified, the first party agrees to sell unto the second parties the following described real estate situated in Logan County, Arkansas, to-wit: (Here follows the description of the land.)

"And the said second parties, in consideration of the premises, hereby agree to pay to the order of the said first party the following sums at the several times named below:

"Nov. 1, 1904, $50, 10 per cent after due.

"Nov. 1, 1905, $100, 10 per cent after date, (indorsed) paid A. Hall.

"Nov. 1, 1906, $100, 10 per cent after date, (indorsed) paid A. Hall.

"Nov. 1, 1907, $100, 10 per cent after date, (indorsed) paid A. Hall.

"For which several amounts the parties of the second part have executed and delivered to the said party of the first their four (4) promissory notes, dated on the 3d day of September, 1904.   *   *   *

"But in case the said second party shall fail to make the payments aforesaid, or any of them, punctually, and upon the strict terms and at the times above limited, and likewise to perform and complete all and each of the agreements and stipulations aforesaid, strictly and literally, without any failure or default, time being of the essence of this contract, then this contract shall, from the date of such failure, be null and void, and all the rights and interests hereby created or then existing in favor of said

second parties, their heirs or assigns, or derived under this contract, shall utterly cease and determine, and the premises hereby contracted shall revert to and revest in the said first party, his heirs or assigns (without any declaration of forfeiture or act of re-entry, or without any other act by the said first party to be performed, and without any right in said second parties of reclamation or compensation for moneys paid or improvements made), as absolutely, fully and perfectly as if this contract had never been made.

"And it is hereby further convenanted and agreed by and between the parties hereto that, immediately upon the failure to pay any of the notes above described, all previous payments shall be forfeited to the party of the first part, and the relation of landlord and tenant shall arise between the parties hereto for the year from January 1st immediately preceding the date of default, and the said party of the second part shall pay rent at the rate of ($50) fifty dollars for occupying the premises from the said January 1st to the time of default, such rent to be due and collectable immediately upon such default."

The defendant claimed that the plaintiffs failed to pay the last two mentioned notes; and on November 27, 1907, he gave written notice to them to quit the land and deliver its possession to him. The plaintiffs on the following day instituted this suit in the Logan Chancery Court, and in their complaint alleged that they had paid all said notes and asked for a specific performance of the above contract to convey said land to them. On December 2, 1907, William Friar instituted in the Logan Circuit Court a suit of unlawful detainer against the plaintiffs, and therein sought a recovery of the possession of said land. That suit was transferred to the Logan Chancery Court, and in said court was consolidated with the above suit of plaintiffs for specific performance.

Upon a trial of the cause in the chancery court a decree was rendered granting the prayer of the plaintiffs and divesting all title to the land out of defendant and investing same in plaintiffs. From that decree the defendant presents this appeal.

1. It is contended by the defendant that the plaintiffs failed to pay the last two notes' mentioned in the above contract; and that by its terms time was of the essence thereof, and on the

failure to make said payments the right of plaintiffs to purchase the land became forfeited.

Parties may enter into a valid contract relative to the sale of land whereby they may provide that time of payment shall be of the essence of the contract, so that the failure to promptly pay will work a forfeiture. *Ish* v. *Morgan,* 48 Ark. 413; *Quertermous* v. *Hatfield,* 54 Ark. 16; *Block* v. *Smith,* 61 Ark. 266. But the final effect of such an agreement will depend on the actual intention of the parties, as evinced by their acts and conduct; and such a breach of the contract as would work a forfeiture may be waived or acquiesced in. The law will strictly enforce the agreement of the parties as they have made it; but, in order to find out the scope and true effect of such agreement, it will not only look into the written contract which is the evidence of their agreement, but it will also look into their acts and conduct in the carrying out of the agreement, in order to fully determine their true intent. It is a well-settled principle that equity abhors a forfeiture, and that it will relieve against a forfeiture when the same has either expressly or by conduct been waived. The following equitable principle formulated by Mr. Pomeroy has been repeatedly approved by this court: "If there has been a breach of the agreement sufficient to cause a forfeiture, and the party entitled thereto either expressly or by his conduct waives it or acquiesces in it, he will be precluded from enforcing the forfeiture, and equity will aid the defaulting party by relieving against it, if necessary." 1 Pomeroy, Eq. Jur. 452; *Little Rock Granite Co.* v. *Shall,* 59 Ark. 405; *Morris* v. *Green,* 75 Ark. 410; *Banks* v. *Bowman,* 83 Ark. 524; *Braddock* v. *England,* 87 Ark. 393.

Guided by these principles, we will inquire whether under the evidence there was actually a forfeiture of this contract to sell and convey; and, if so, whether that forfeiture was waived.

The evidence tends to prove that the plaintiffs paid the first note before its maturity, and paid the second note shortly after its maturity. About the time the third note matured the plaintiffs paid to the defendant $75, and desired that it be appropriated on the payment of that note. The plaintiffs were at that time owing the defendant other indebtedness; and the defendant said to them that he would give them time on the payment of

the land notes, and that he would appropriate this payment to the other indebtedness. He had said before that time that he would give the defendants ten years in which to pay for the land; and on this occasion he indicated and agreed that he would extend the time of the payment of the note for the land, and would not insist on its prompt payment. In accordance with that understanding, the above payment was applied by defendant to the other indebtedness. The defendant did not, during the following year of 1907, make any request for rent for that year; nor did he make a suggestion that the contract was forfeited, although nothing was paid on the note maturing November 1, 1906. In the meanwhile, during all these years, the plaintiffs made lasting improvements on the land, of the value of $390. In the fall of 1907, the plaintiff W. A. Baldridge was contemplating moving from the land to the town of Paris; and he and the defendant entered into oral negotiations by which the defendant agreed to purchase the land back at the price of $400; and, after deducting therefrom what was owing by palintiffs, to pay the balance. It is claimed also by the defendant that this oral agreement was a rescission of the above written contract. While this oral agreement to resell to defendant or to rescind the written contract is denied by W. A. Baldridge, yet the preponderance of the evidence establishes such an agreement. But the undisputed evidence is that the other plaintiff and tenant in common, F. V. Baldridge, never made such an agreement, and there is no testimony that he ever authorized W. A. Baldridge to make such an agreement. The undisputed evidence is, further, that the possession of the property was not delivered; that the notes then unpaid were not turned over, but still retained by Friar; that the written contract was still retained; that no payment was made by defendant; in fact that nothing was done towards carrying out the alleged agreement of resale or of rescission. Neither at that time, nor at any other time, was a forfeiture of the written contract declared by the defendant. On the contrary, on that day, November 2, 1907, the last note was not due, inasmuch as with grace it was not due until November 4, 1907. The defendant testified that it was not convenient to draft the necessary papers evidencing their agreement on that day, and, inasmuch as he was going to be absent from the county for several days, the

drafting and execution of such written agreement were post-
poned. It appears that the defendant had left the two unpaid
notes in the hands of an attorney at Paris for safe keeping. This
attorney had transacted generally a great deal of business for
the defendant; and he had drafted the original contract executed
by the parties in 1904 and the four notes, and had retained pos-
session of the notes ever since their execution. When the two
first notes were paid, the attorney turned those two notes over
to defendant, who delivered them to plaintiffs. On November
7, 1907, the plaintiffs sold the land to Mollie E. Green, and
transferred to her the above written contract, and placed her in
possession of the land. On the same day W. A. Baldridge paid
to said attorney the entire amount due on the last two notes, and
from him received the two notes. The attorney also noted the
payment of these notes on the contract. He did this on the assur-
ance of said Baldridge that this was agreeable to the defend-
ant. The defendant, however, refused to recognize this act of
collection and surrender of said notes, and refused to accept said
money. The attorney at the hearing still had the money and
offered to pay same into court for the party entitled thereto.

From this testimony it would appear that it is doubtful
whether there was such a failure to make payment as to work
a forfeiture of the contract. The note maturing November 1,
1906, was extended, and presumably for a year. About the time
of the maturity of the two last notes, negotiations were being
made relative to the land by the defendant and one of the plain-
tiffs; and within three days after the maturity of the notes they
were paid in full by the plaintiffs. In addition to this, the con-
duct of the parties indicate that it was not the intention of the
parties to insist on payment on the exact day of maturity of the
two last notes; and in any event that the defendant waived any
such forfeiture or acquiesced in it, if such forfeiture was ac-
tually made. So that under the facts and circumstances of this
case the defendant cannot insist now in a court of conscience on
a forfeiture of this contract.

2. It is urged by counsel for defendant that by the above
oral agreement the plaintiffs relinquished to him the written con-
tract and their interests therein, and thus rescinded the written
contract of sale. It is urged that such an agreement need not be

in writing. The above written contract for the sale of the land, not being forfeited but in full force, was in effect a bond for title. By virtue of that contract, therefore, the plaintiffs obtained an equitable interest in the land. Under the statute of frauds, as enacted in this State, it is provided that: "To charge any person upon a contract for the sale of lands, tenements or hereditaments or any interest in or concerning them," such agreement or contract must be in writing signed by the party to be charged therewith. Kirby's Digest, § 3654, subdiv. 4. In Browne on Statute of Frauds, § 229, it is said: "The 4th section of the statute of frauds, extends to and embraces equitable as well as legal interests." In the case of *Smith* v. *Burnham,* 3 Sumner's Reports, 435, Story, J., says: "A contract for the conveyance of lands is a contract respecting an interest in lands. It creates an equitable estate in the vendee in the very lands, and makes the vendor a trustee for him. A contract for the sale of an equitable estate in lands * * * is clearly a sale of an interest in the land within the statute of frauds." In *Hughes* v. *Moore,* 7 Cranch, 176, Marshall, C. J., says: "The court can perceive no distinction between the sale of land to which a man has only an equitable title and a sale of land to which he has a legal title. They are equally within the statute."

The alleged agreement made on November 2, 1907, was in effect a resale of the land, or of the interest of the plaintiffs therein, back to the defendant. It was therefore a sale of an equitable interest in the land, and falls within the statute of frauds. The rescission of a contract of the sale of land is in effect the sale of an equitable interest in the land; it is in effect a resale of the land. And while it appears that it is somewhat unsettled as to whether a contract for the sale of land may be rescinded by a parol agreement, yet, as is said in Smith on the Law of Fraud, § 363: "The weight of authority would seem to be that it cannot." And it appears to be uniformly held that an oral agreement to rescind a contract for the sale of land entered into, after some payments have been made and others are due, will be held to be within the statute of frauds and invalid, unless followed by an actual abandonment of the sale by both parties and a restoration of the property to the vendor. *Pratt*

v. *Morrow,* 45 Mo. 404; *Dougherty* v. *Catlett,* 129 Ill. 431; *Miller*
v. *Pierce,* 104 N. C. 389; *Maxon* v. *Gates,* 112 Wis. 196.

Furthermore, it is not contended that the plaintiff F. V.
Baldridge entered into any contract for a resale of the land or
a rescission of the contract. "One tenant in common cannot bind
his cotenant by any unauthorized agreement or act in respect to
the common property." 17 Am. & Eng. Ency. Law (2d Ed.),
672; 23 Cyc. 494.

It follows, therefore, that there are no errors in the findings
of the chancellor. The decree is affirmed.