GOFORTH *v.* EADS

5-3653                                            394 S. W. 2d 728

Opinion delivered October 25, 1965.

*Hout, Thaxton & Hout,* for appellant.

*Hodges & Hodges,* for appellee.

PAUL WARD, Associate Justice. This litigation is the result of a dispute over the ownership of residential property in the City of Newport.

On May 30, 1959 appellant, Clara Andrews Goforth (referred to as "vendor") executed a contract to convey the property to Mr. and Mrs. Eads (referred to as "purchasers") for the price of $2,000, to be paid as follows: $50 per month for ten consecutive months beginning June 1st, 1959 and the balance payable thereafter at $25 per month.

The contract contained in essence the following additional pertinent provisions: (a) If the purchasers be in

default it is agreed that the vendor shall retain the cash payments as liquidated damages, and the contract shall thenceforth be at an end; (b) If purchasers fail to pay any installment the entire debt, at the option of the vendor, may be declared to be immediately due and payable; (c) The purchasers were to have possession "not later than May 30, 1959," and; (d) The purchasers were obligated to pay all taxes, pay for $1500 in insurance, and to keep the premises in good repair.

Mr. and Mrs. Eads promptly took possession of the property, but the $25 payments due on the first of October and November and December 1963 became delinquent. On December 28, 1963 the Eads executed a quit-claim deed conveying the property to Mr. and Mrs. Staton, who helped the Eads to make the delinquent payments and who have paid, or rather have attempted to pay, all accruing payments due appellant since that time.

On February 6, 1964 appellant filed a complaint in chancery court against Mr. and Mrs. Eads and Mr. and Mrs. Staton (appellees herein) alleging in substance: (a) On December 1963 Mr. and Mrs. Eads were in default; (b) She then declared the contract terminated and at an end; (c) The Eads abandoned the property, and Mrs. Eads signed a statement relinquishing all rights therein; (d) The Eads, without any interest in the property, conveyed it by quit-claim deed to Mr. and Mrs. Staton who forceably entered and took possession of the premises without her knowledge or consent, and; she has demanded possession of the property without success. The prayer was that the deed to the Statons be cancelled; that the sales contract be declared null and void, and that she be declared to have a clear title to the property. The issues raised by the complaint were properly controverted by appellees, and the cause was transferred to the circuit court for trial.

The trial judge (on exchange) who, by agreement, presided as a jury, made in substance the following findings: (a) The Eads did not surrender possession of the property to appellant; (b) Appellant waived the default payments; (c) The Eads made a bonafide effort

to keep up the payments, and; (d) the Statons were entitled to the title and possession of the property.

For a reversal appellant relies on four separate points, but, in view of the decision we have reached, it becomes necessary to consider only the first three.

*One.* It is first contended that after the last three payments due in 1963 became delinquent, the Eads surrendered possession of the house. The findings of this disputed fact, resolved by the trial court against appellant, is, we think, supported by substantial evidence. Although appellant testified to the effect that Mrs. Eads said they were giving up the contract and surrendering possession of the property, and although the Eads concede they moved to an apartment, this testimony is contradicted and explained.

Mrs. Eads testified:

"Q. At the time you sold this property to Mr. and Mrs. Staton did you have any possessions in the house itself?

"A. We had some furniture in there.

"Q. Did you have it under lock and key?

"A. Yes, Sir.

"Q. Who was carrying the key?

"A. I was.

"Q. After you sold to Mr. and Mrs. Staton what did you do with the key?

"A. I gave the key to Mr. Staton.

"Q. Did you then finally turn possession over to them?

"A. Yes, Sir.

Mr. Eads testified:

"Q. At the time that you sold this property to Mr. and Mrs. Staton, did you and your wife still have this property under lock and key?

"A. Yes, Sir.

"Q. And you had the key to the lock, is that right?

"A. That's right, yes.

"Q. You and your wife had not given up possession of this house then at that time, had you?

"A. No, we did not.

"Q. And did you and your wife still have some property in the house under that lock and key?

"A. We did."

Since the trial judge sat as a jury we must of course give his findings the same weight as the findings of a jury, and must approve them if they are supported by substantial evidence. In this instance there was substantial evidence to show the Eads had not surrendered possession of the house.

*Two.* Next, appellant says the trial court erred in finding that she waived the default payments, but we cannot agree. The contract provided that appellant had a right to declare the contract to "be at an end" if the purchasers became delinquent. However, she was not compelled to exercise that right. The undisputed testimony shows that Eads had previously been in default many times due to illness and other causes, but no forfeiture was declared. On the occasion in question here, according to the Eads, appellant offered to take $100 and reinstate the contract, and that this offer was accepted. This testimony was disputed by appellant. It would serve no useful purpose to set out all the testimony bearing on the question of waiver, because, as stated previously, the finding of the trial court on this question must be affirmed if supported by substantial evidence. Set out below is an excerpt from the testimony of Mr. Staton:

"Q. Did she (appellant) ever discuss with you the delinquent payments and whether or not she would accept the delinquent payments?

"A. The second time, yes, Sir, she did.

"Q. What did she say at that time?

"A. She said they were behind a hundred dollars; said, 'I told them if they would give me a hundred dollars that I would let them continue with the payments.'

"Q. Can you place that in time with relation to the date that you bought the property?

"A. It was the day before the contract was made.

"Q. In other words, the contract was made on the 28th day of December.

"A. Yes, Sir.

"Q. And she said that to you on the 27th day of December.

"A. Yes, Sir, she did."

*Three.* Finally, it is contended that the "Eads had no interest in the real property in question at the time of the attempted sale to "the Statons." To support the above it is stated that "the Eads" interest in the real property was terminated by appellant, Goforth. . . .," meaning of course the sales contract was void because appellant did not waive the default payments. This issue however has already been resolved against appellant by what we have previously said and held.

Affirmed.