Herbert HATFIELD et ux *v.* MIXON
REALTY CO. et al

CA 80-57                                                 601 S.W. 2d 894
Court of Appeals of Arkansas
Opinion delivered June 18, 1980
Released for publication July 8, 1980

*William Russell Gibson,* of *Pettus & Johnson*, for appellants.

*Hartman Hotz* and *Donn Mixon*, for appellees.

WARREN WOOD, Special Judge. The basic facts resulting in this litigation were stipulated to by counsel and can be summarized as follows: In the month of September, 1969, Rosa Marinoni entered into a land sale and escrow agreement with Herbert Hatfield involving property located on College Avenue in Fayetteville, Arkansas. Under the agreement Hatfield was to pay seller the sum of $53,000 — $3,000 of which was a down payment, with the balance of $50,000 to be paid in 120 monthly installments plus interest. McIlroy Bank & Trust Company was named escrow agent to receive the monthly payments, and when the balance was paid in full, was to deliver an executed warranty deed and abstract of title to Mr. Hatfield.

On the 9th day of February, 1972, Mr. Hatfield and wife contracted to sell the College Avenue property to H. D. Mixon and Carolyn M. Whatley for a consideration of $75,000, to by paid by a down payment of $15,000; payment of $22,-083.43 in monthly installments directly to the Seller, and a balance of $37,916.57 to be paid to McIlroy Bank & Trust for the purpose of liquidating the amount yet owed by Herbert Hatfield to Rosa Marinoni or her estate. When such balance was paid, the escrow agent was to deliver an executed warranty deed to the purchasers.

In the Marinoni contract with Mr. Hatfield she reserved the right, in case of delinquency for more than 30 days, to declare the contract terminated and retain all sums paid prior thereto as liquidated damages. The Hatfield/Mixon and Whatley agreement provided that upon non-performance by the vendees, the vendors "may declare this contract terminated and at an end, take possession of the property and retain any and all sums paid under this contract as rents for the use of the property." Mixon and Whatley later assigned their interest in the contract to Mixon Realty Company, who accepted same subject to all obligations assumed by the assignors.

The above assignment is dated August 23, 1974. Counsel agree that the direct obligation to Mr. Hatfield and wife was paid in full by assignee before this suit was instituted.

The problem resulting in litigation arose in January, 1979, when a representative of Rosa Marinoni's estate (she having died in the year 1970) wrote a letter to the escrow agent calling attention to default in the payment of installments due under Rosa Marinoni's contract of sale with Mr. Hatfield and demanding that the escrow be terminated with all documents held by such agent to be returned. (The delinquency will be mentioned in more detail later on.) Upon receipt of said letter, an officer of the escrow agent by letter dated January 22, 1979, advised Mr. Hatfield of the communication received from the Marinoni representative and stated therein that:

"Unless there is a mutual settlement before January 31, 1979, I will deliver all documents into Court in order for a decision to be delivered to this agent. If any monies are held by this agent on the deadline above, they will be turned over to the Court along with the documents."

In response to the above-mentioned letter, Mr. Hatfield issued a check dated January 25, 1979, to McIlroy Bank and the Marinoni estate in the amount of $20,290.39 in full payment of the balance due said estate. Also, the Hatfields redeemed said property after a tax sale for non-payment of taxes in prior years. The redemption certificate and treasurer's receipt evidencing such redemption were filed of record on March 7, 1979.

On or about March 7, 1979, counsel for Herbert Hatfield wrote a letter to Mr. Don Mixon, executor of the Estate of H. D. Mixon, Mixon Realty Company, stating that he had been retained by Herbert Hatfield to represent him in obtaining possession of the property at 355 North College Avenue, Fayetteville, Arkansas, for failure of Mixon and Whatley to comply with the contractual agreement and declaring said contract to be terminated and the property considered to be in the possession of the Hatfields. Enclosed

in said letter was a copy of the redemption certificate above mentioned.

In March of 1979 the escrow agent filed a bill of interpleader in the chancery court of Washington County, seeking guidance as to its further course of action in the matter. For some unexplained reason Mixon Realty Company was not served with process until late September, 1979. The Hatfields and executor of the estate of Rosa Marinoni, having been served, filed responsive pleadings wherein each pled forfeiture and prayed for termination of their contracts with their respective vendees. In a response to the pleading filed by the Marinoni Estate, Hatfields pled that Marinoni had agreed to waive strict performance of the contract and was estopped from pleading forfeiture. The Marinoni Estate accepted the amount owed and was dismissed from the lawsuit.

A pre-trial hearing was held by the trial court on October 3, 1979, and at such hearing all of the facts and documents mentioned herein were stipulated to by counsel. At the conclusion of said hearing the Court stated that if Mixon Realty Company tendered to Herbert Hatfield and wife all amounts expended by them in making payment on the Marianoni balance and other expenses incurred, no forfeiture would be declared and that the Court would refuse to quiet title to said property in Herbert and Maxine Hatfield.

On the day following the pre-trial hearing, October 4, 1979, the Hatfields through their attorney advised Mixon Realty Company that they would not accept the tender, if offered, but did advise as to the amount expended, as directed by the Court. Such tender was made to Herbert Hatfield and wife on October 10, 1979, but same was rejected, and forfeiture re-asserted.

The only issue involved in this case relates to the Court's refusal to declare a forfeiture. The appellants urge four points of error, as follows:

## POINT I

The contract for the sale and purchase of real property,

dated February 9, 1972, is valid and enforceable according to its terms as a matter of law, and the Court erred in not so enforcing it.

## POINT II

Appellants did not waive their right to declare forfeiture.

## POINT III

Appellee's failure to cure its default by tender of full payment for seven months following appellants' declaration of forfeiture was unreasonable as a matter of law.

## POINT IV

The Court's decision to allow appellee until October 10, 1979, to cure default, without finding that appellants waived their right to declare forfeiture was arbitrary, clearly against the preponderance of the evidence, and contrary to law.

We do not feel that each point needs to be discussed separately, because they are somewhat interrelated. Counsel for appellants recognize, and frankly admit, the old maxim that "equity abhors a forfeiture." They further recognize that our supreme court in several cases, and particularly in the case of *Triplett* v. *Davis*, 238 Ark. 870, 385 S.W. 2d 33 (1964), has said:

> "It is a well known equitable principle that equity abhors a forfeiture and will seize upon slight circumstances that indicate a waiver in order to prevent a forfeiture."

But, counsel for appellants sincerely urge that the written contract is valid and enforceable according to its terms as a matter of law; that appellants did not waive their right to declare forfeiture; and that the Court, not having specifically found a waiver existing, committed error in permitting appellee to cure its default.

The trial judge did not favor us with specific reasons for

his decision, but we now refer to the facts and circumstances which in our opinion fully justify the Court's decision:

> 1. Although Mixon Realty Company had made its last regular payment to the escrow agent on the indebtedness due Marinoni in the month of February, 1976, no complaint was made by anyone on behalf of Marinoni as to such default until the month of January 1, 1979. In pleadings filed by counsel for appellants and in oral argument, they stated that any default in payment to Rosa Marinoni was agreed to and acquiesced in for over a period of two years. Appellants, in effect, urge that there was a waiver by the Marinonis but not by the Hatfields. We do not agree with this distinction made by appellants and find that any waiver on the part of the Marinonis inured to the benefit of Mixon Realty. Appellant's position in this respect is inconsistent. Since the Hatfields had been paid in full, they had no cause to complain until the executor made his demand for payment.

> 2. An interest payment of $815.19 was made by Mixon Realty Company on January 31, 1978, which was accepted by the escrow agent.

> 3. Mixon Realty had a substantial equity in the property involved and any indebtedness yet due was adequately secured.

> 4. Upon learning of the demand made by the Marinoni Estate Mr. Hatfield, before making contact with Mixon Realty, promptly paid the Marinoni debt in full. The point we make is that Hatfield's only interest in the matter was that Mixon protect him against liability to the Marinoni Estate and that Hatfield did not give Mixon the opportunity to give him such protection.

Forfeiture provisions in land contracts are to be enforced and have been enforced in cases where there is no substantial equitable circumstance that calls for refusal of forfeiture. For example see the case of *White* v. *Page*, 216 Ark. 632, cited by appellants. In this case we find that equitable circumstances

809

did exist that justified the Chancellor's decision to deny forfeiture. While no finding was made by the trial court that forfeiture had been waived by the Marinoni Estate, it is undisputed that such waiver had been made and we hold that same inured to the benefit of Mixon Realty. The Chancery Court decision is to be affirmed upon our de novo review if not clearly against the evidence and finding its decision supported by substantial evidence we affirm.

Special Judge Fred Jones joins in the opinion.

Newbern and Penix, JJ., not participating.