**In re Elouise L. HAYES, Debtor.**

**Bankruptcy No. LR 88–1997M.**

United States Bankruptcy Court,
E.D. Arkansas, W.D.

June 28, 1989.

Stuart Miller, Little Rock, Ark., for Southern Inv. Co.

Willard Proctor, Jr., Little Rock, Ark., for debtor.

A.L. Tenney, Little Rock, Ark., trustee.

### ORDER

JAMES G. MIXON, Bankruptcy Judge.

On October 5, 1988, Elouise L. Hayes filed a voluntary petition for relief under the provisions of chapter 13 of the United States Bankruptcy Code. On November 15, 1988, the debtor filed a proposed plan, and Southern Investment Company (Southern) objected to confirmation of the plan. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L), and the Court has jurisdiction to enter a final judgment.

On November 22, 1983, the debtor and Southern entered into a real estate sales contract for the purchase of a duplex at

2600–2602 Izard Street.[1] Under the contract, the debtor agreed to pay a $350.00 down payment on the purchase price of $19,487.50, with the balance payable in monthly installments of $200.00, including interest on the principal indebtedness at the rate of 10% per annum, beginning on January 1, 1984. The debtor also agreed to pay all taxes and insurance on the property. The contract provided that:

> It is distinctly agreed and understood that time is the essence of this contract, and that the moving consideration for its execution by [Southern] is the prompt payment by [Hayes] of all payments which he stipulates to make as the same become due and payable by the terms hereof. If [Hayes] ... allows said monthly payments to become delinquent for more than thirty days, [Southern] may, at its option, either declare the entire balance of the purchase price due and collectible, or rescind this contract, and in case of said rescission, all moneys paid by [Hayes] shall be taken and retained by [Southern], not as a penalty, but as and for rent of the land; and thereupon [Southern], upon notice as hereinafter provided, may take possession of said land and [Hayes] agrees to immediately surrender the peaceful possession thereof to [Southern]. It is agreed that no title to the land hereinabove described shall vest in [Hayes] until the full purchase price of said land and interest thereon have been paid in full.

> The failure, however, of [Southern] to exercise any option herein given at the time of any default shall not operate to bar or abridge its right to exercise such option upon any subsequent default of [Hayes].

No evidence was introduced of the debtor's payment record from 1984 through August 1987. Beginning with September 1987, payments were made or tendered by the debtor as follows:

| Date Payment Due | Date Payment Made or Tendered |
|---|---|
| 9–01–87 | 10–08–87 |
| 10–01–87 | 12–09–87 |
| 11–01–87 | 12–09–87 |
| 12–01–87 | 2–05–88 |
| 1–01–88 | 2–05–88 |
| 2–01–88 | 2–05–88* |
| | 4–11–88 |
| 3–01–88 | 4–11–88 |
| 4–01–88 | 7–25–88** |
| 5–01–88 | 7–25–88** |
| 6–01–88 | 7–25–88** |

\* Partial payment of February installment
\*\* Payment not accepted by Southern

On June 27, 1988, Southern sent a letter to the debtor stating that the contract was rescinded and demanding possession of the property. At that time, the April payment was 87 days late, the May payment was 57 days late, and the June payment was 26 days late. The debtor testified that she did not remember receiving the June 27, 1988, letter,[2] and that she contacted an attorney who sent a certified check for $660.00 to Southern for the April, May and June payments, plus late charges. She testified that the check was dated July 25, 1988. In late August or early September, she sent a check for $400.00 for the July and August payments.

On September 30, 1988, Southern sent another letter to the debtor. This letter stated that, although Southern would not reinstate the rescinded contract, it was giving the debtor an option to execute a new contract for the purchase of the property. Under the new contract, Southern agreed to accept as a new down payment the $1,060.00 that had been submitted by the debtor for the delinquent payments. Southern gave the debtor until October 3, 1988, to execute the new contract. She did not do so, and filed her petition in bankruptcy two days later.

---

1. According to the testimony, the property was not the debtor's homestead, but was used as rental property.

2. The debtor's testimony that she did not receive the letter was weakened by the testimony of a Southern representative who said the debtor called almost weekly to reinstate the contract, and by the undisputed fact that the debtor had an attorney send a certified check for the overdue payments, rather than delivering the payment personally as she had previously done.

In her bankruptcy schedules, the debtor listed Southern as a secured creditor holding a claim of $16,346.59. The debtor listed the duplex at 2600–2602 Izard as property of the estate. The debtor's twenty-four month plan proposed to pay Southern $58.00 a month on the arrearages as well as the regular $200.00 monthly payment. Southern objected to confirmation and contended that the duplex was not property of the estate because the contract was terminated prior to commencement of the bankruptcy case.

■ The first issue presented is whether the debtor's interest in the real estate sales contract is property of the estate. 11 U.S.C. § 541 defines property of the estate as "all legal or equitable interests of the debtor in property as of the commencement of the case." The extent of a debtor's interest in property is determined primarily by reference to state law. 4 *Collier on Bankruptcy* ¶ 541.02[1] (15th ed.1989).

A seller's right to forfeit, without judicial process, a purchaser's interest under a real estate sales contract because of the purchaser's default is recognized in Arkansas. *Humke v. Taylor*, 282 Ark. 94, 97, 666 S.W.2d 394, 395–96 (1984); *White v. Page*, 216 Ark. 632, 637, 226 S.W.2d 973, 975 (1950). If time is of the essence in an agreement, failure to pay promptly will constitute a default for which the seller may declare a forfeiture. *Vernon v. McEntire*, 232 Ark. 741, 746, 339 S.W.2d 855, 858 (1960); *Friar v. Baldridge*, 91 Ark. 133, 137, 120 S.W. 989, 991 (1909). However, forfeiture provisions may be waived by the conduct of the parties. Courts of equity will seize upon slight circumstances to indicate a waiver of the forfeiture provisions and prevent unjust enrichment. *Triplett v. Davis*, 238 Ark. 870, 872, 385 S.W.2d 33, 34 (1964); *Hatfield v. Mixon Realty Co.*, 269 Ark. 803, 807, 601 S.W.2d 894, 896 (1980). Under state law, even though a seller has declared a forfeiture of the contract because of the purchaser's default, an action for enforcement of the forfeiture is still subject to a defense in chancery court that the right of forfeiture has been waived. *Humke v. Taylor*,

282 Ark. at 97–98, 666 S.W.2d at 396. The equitable defense is an interest in property held by the debtor and constitutes property of the estate. *Jones v. Vee Jay, Inc. (In re Vee Jay, Inc.)*, Ch. 11 Case No. FS–86–407M, CMS No. 87–192M (Bankr.W.D.Ark. Sept. 15, 1987), *appeal dismissed*, Civ. No. 87–2180 (W.D.Ark. May 16, 1988).

Whether a court of equity will enforce a forfeiture for default by the purchaser depends upon the circumstances of the case and the conduct of the forfeiting party. *Friar v. Baldridge*, 91 Ark. at 137, 120 S.W. at 991; *Souter v. Witt*, 87 Ark. 593, 600, 113 S.W. 800, 803 (1908). A seller can waive its right of forfeiture if it does not insist on strict compliance with the contract terms regarding prompt payment and repeatedly accepts delinquent payments. *Humke v. Taylor*, 282 Ark. at 98, 666 S.W.2d at 396; *Triplett v. Davis*, 238 Ark. at 872–73, 385 S.W.2d at 34–35; *Braddock v. England*, 87 Ark. 393, 395, 112 S.W. 883, 884 (1908); *Welch v. Cooper*, 11 Ark.App. 263, 267, 670 S.W.2d 454, 458 (1984). Granting an extension of time for payment without demanding strict compliance in the future has been held to constitute a waiver. *Vernon v. McEntire*, 232 Ark. at 746–47, 339 S.W.2d at 858; *Friar v. Baldridge*, 91 Ark. at 139, 120 S.W. at 992; *Banks v. Bowman*, 83 Ark. 524, 527, 104 S.W. 209, 210 (1907). Failure to declare a forfeiture upon past defaults may constitute a waiver. *Goforth v. Eads*, 239 Ark. 861, 864, 394 S.W.2d 728, 730–31 (1965). Although a seller may have waived its right to declare a forfeiture by its past conduct, that right may be reinstated by the seller's providing the purchaser with clear and definite notice that a delinquency has occurred and allowing the purchaser a reasonable opportunity to pay the delinquent amounts before declaring a forfeiture. *Ashworth v. Hankins*, 248 Ark. 567, 573, 452 S.W.2d 838, 841–42 (1970); Note, *Land Contract—Waiver and Reinstatement of Forfeitures*, 24 Ark.L.Rev. 578 (1971).

In the case at bar, the debtor made payments for four and one-half years totalling approximately $10,400.00 in principal and interest. On April 11, 1988, the last date a payment was credited to the debtor's ac-

count, a principal balance of $16,350.50 remained on the purchase price of $19,487.50.

According to the proof, the debtor had not made a timely payment under the contract in ten months prior to the notice of rescission. However, there was no evidence that Southern had ever threatened rescission of the contract because of the previous late payments or informed the debtor that late payments were unacceptable. The debtor testified that when her payments were late, she simply took the payment to Southern's office, paid the installment plus a late charge, and received a receipt. At the time the contract was rescinded, the debtor was farther behind in her payments than she had ever been; however, Southern, as had been its prior practice, did not contact the debtor about the delinquent payments. Southern's prior conduct of accepting untimely payments constituted a waiver of its right to forfeit the debtor's equity because the installment payments were delinquent. Southern's rescission letter on June 27, 1988, was the first notice the debtor had that Southern had chosen to enforce the prompt payment provisions of the contract. The debtor remained in possession of the property, and no state action to enforce the rescission was brought. Under these facts, Southern waived its right to forfeit the debtor's equity for making untimely payments. *See Hatfield v. Mixon Realty Co.*, 269 Ark. 803, 601 S.W.2d 894 (1980). Therefore, the June 27, 1988, letter did not constitute a valid rescission of the contract with the debtor.

■ The debtor has asked that the November 22, 1983, contract be reinstated and that she be allowed to treat the balance due under the contract as a long-term debt in her chapter 13 plan. Under the Court's holding, the contract was still in effect when the debtor filed her chapter 13 petition. The treatment of the contract in her plan depends upon whether the contract is characterized as a lien device or as an executory contract. This Court has construed a real estate sales contract to constitute a lien device, rather than an executory contract, for purposes of the Bankruptcy Code. *Thorpe v. Jones (In re Jones)*, 54 B.R. 697, 698–99 (Bankr.E.D.Ark.1985). Furthermore, under Arkansas law, if the parties to a real estate sales contract intend a present conveyance of real property, with title merely withheld as security for payment of the installments, the contract will be construed to create a mortgage in favor of the seller and vest equitable title in the purchaser. *Judd v. Rieff*, 174 Ark. 362, 365–66, 295 S.W. 370, 372 (1927); *Gunter v. Ludlam*, 155 Ark. 201, 203, 244 S.W. 348, 349 (1922); *See* Pasvogel, *Mortgage Substitutes—The Law in Arkansas*, 9 U.Ark. Little Rock L.J. 433, 446–450 (1986–87). Therefore, the debtor will be allowed to treat her obligation under this contract as a lien device securing a long-term debt.

The debtor's plan proposes to pay the regular monthly payment under the contract plus an additional amount until the arrearage is cured, then to maintain the regular payment upon completion of the plan. This treatment is allowed under 11 U.S.C. § 1322(b)(5).[3] However, the plan must be modified so that the payment to Southern includes all arrearages which have accrued since the case was taken under advisement, as well as any taxes paid by Southern under the contract.

Therefore, Southern's objection to confirmation is overruled in part and sustained in part. The debtor has twenty days to file a modified plan, motion to dismiss or motion to convert.

IT IS SO ORDERED.

---

**3.** (b) Subject to subsections (a) and (c) of this section, the plan may—

    . . . .

    (5) . . . provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due; . . .