**In re Louis GUIDO and Cheryle Guido, Debtors.**

No. 4:06–BK–11337 E.

United States Bankruptcy Court,
E.D. Arkansas,
Little Rock Division.

June 20, 2006.

Jean M. Madden, Madden Law Firm, Little Rock, AR, for Debtors.

## ORDER SUSTAINING OBJECTION TO CONFIRMATION

AUDREY R. EVANS, Bankruptcy Judge.

The *Objection to Confirmation* filed by McEntire Farms, Inc. ("**McEntire**") was heard on June 1, 2006. John Aldworth appeared on behalf of McEntire, and the owners of McEntire were also present. John Jackson appeared on behalf of the Debtors who were also present. Jeffrey Ellis appeared on behalf of the Chapter 13 Trustee. This is a core proceeding under 28 U.S.C. § 157(b)(2)(L), and the Court has jurisdiction to enter a final judgment in this case.

## INTRODUCTION

The issue presented in this case is whether a Real Estate Sales Contract (the "Contract") entered into between the Debtors and McEntire in May 2005 constitutes a mortgage or an executory contract with a valid forfeiture clause under Arkansas law. If the latter, the Court must also determine whether McEntire waived its rights under the forfeiture clause. The Court concludes that the Contract is an executory contract with a valid forfeiture clause and McEntire did not waive its rights under the forfeiture clause. As such, the Contract was canceled prior to the Debtors' bankruptcy filing, and they have no legal or equitable interest in the property at issue. Accordingly, the Debtors must modify their schedules and Chapter 13 plan to remove the property and McEntire as a secured creditor.

## FACTS

On May 10, 2005, the Debtors executed the Contract agreeing to pay McEntire $37,530 for approximately 22.66 acres located in Van Buren County (the "**Property**"). The purchase price was to be paid in 240 monthly installments of $295.85. The deed to the Property was to be held in escrow and delivered to the Debtors "only upon performance of the conditions herein set out." Taxes due for 2005 were to be pro-rated, with Debtors paying for their portion, and taxes due for 2006 were to be paid by the Debtors. Paragraph 12 provides:

> Time is of the essence in this agreement. If any payment has not been made by Buyers as herein set out allowing a thirty (30) day grace period, or in the event that Buyers defaults in any other provision of this agreement, then the Sellers may, at Seller's option, declare all payments due and payable to bring contract current, and if not paid within ten (10) days, Seller may declare this Contract to be thereupon terminated and forfeited by giving notice of Seller's election so to do to the Buyers at Buyer's last known address. Thereupon, the Buyer agrees that Buyers will promptly and forthwith vacate the premises and return possession thereof to the Sellers without additional notice. In such event, the payments made thereto are to be considered as rent for the property, and the Escrow Agent is authorized to turn over all money and papers to the Sellers and to be relieved of further liability. Any and all items remaining on property thirty (30) calen-

dar days after cancellation will be considered as abandoned, and will become the property of the Sellers.

Pursuant to the Contract, McEntire installed a well and septic tank on the Property. The Debtors did not pay the property taxes and did not keep the property insured, and as described in more detail below, they only made five out of nine scheduled payments before McEntire canceled the Contract in March 2006.

During the summer of 2005, the Debtors built a 2 bedroom, 1 bath dwelling on the property with partially used and partially new materials; the total cost of construction was $6,000. Debtor Louis Guido testified that he built the structure himself along with some help from his father. The dwelling has a rusted tin roof and Oriented Strand Board ("OSB")[1] siding. There is a plywood floor and no sheetrock. There has been tar paper on the outside since November. The dwelling is approximately 800 square feet, has hot water and plumbing, and has electricity. Mr. Guido testified he installed a $275 utility meter on the Property. Mr. Jimmy McEntire (who is a 50% shareholder in McEntire) testified that he is a licensed real estate agent and in his opinion, the dwelling is not very "desirable" but may be something a deer hunter might like to use as a cabin. He also testified that if the trash, old vehicles and dwelling were moved, the Property would be easier to sell. Photos of the dwelling were introduced into evidence which supported Mr. Jimmy McEntire's testimony and led the Court to find such testimony to be reliable and accurate.

After executing the Contract, Mr. Guido also began "rocking" the Property—that is, he removed rocks from the Property and sold them. Mr. Guido testified he made approximately $4,000 rocking the Property and that he used this money for living expenses and to make some of the payments on the Property. Mr. Guido said he could not rock the property in the winter, but he began rocking again in the Spring until April when Mr. Jimmy McEntire caught him and told him to stop.

On behalf of McEntire, Clifton McEntire who is McEntire's President, Secretary and Treasurer, and a 50% shareholder, testified that Debtors made a down payment of $200,[2] and 5 monthly payments totaling approximately $1,260. Mr. Guido did not dispute these numbers. Specifically, the Debtors made the June, July and August payments, and then missed the September, October and November payments. On December 16, 2006, the Debtors made a payment of $586 which was applied to the September and October payments. No payments have been made since the double December payment. Mr. Guido testified that he received letters notifying him that he needed to pay after missing the September, October and November payments but that he never received a notice to vacate. Mr. Clifton McEntire also testified that late notices were sent by the escrow agent, but that no notice to vacate was issued as the Contract was not canceled after those late payments. On February 21, 2006, the Debtors were sent a letter informing them that they had 10 days to make the three missed payments (November 2005 through January 2006) and the February 2006 payment

---

1. OSB is a substitute for plywood. *See* www.osbguide.com/osb.html.

2. Although the Contract references no down payment, the parties testified that the Guidos had previously made a $200 down payment

upon execution of another land sale contract in which they purchased a smaller amount of land; they later decided to purchase more land, and executed a new contract on the entire 22.6 acres.

which was then due, or the Contract would be canceled. The letter specifically provided, in part, as follows:

> Please note that if your account is not paid current within 10 days from receipt of this letter, the papers will be turned over to the seller. Your contract will be terminated, and become null and void, all monies paid, pursuant to the contract agreement, shall be applied as rent. Furthermore, you will have 30 days in which to remove any and all personal property from the premise. Any and all property remaining after the 30 days will be considered as abandoned and will become the property of the seller.

Mr. Guido testified that he received this letter, and that his wife had a conversation with Mr. Jimmy McEntire about having a few more days to pay so that they could get their tax refund check and use it to pay the account. Mr. Jimmy McEntire confirmed this conversation in his testimony. Mr. Guido said that they asked Mr. McEntire for a week's extension, and they were told to come back in a week, but that when they came back after a week, they were told the Contract had been canceled. Mr. McEntire testified that during his conversation with Mrs. Guido, he told her they had until Friday of that week to pay, and when she did not pay, Clifton McEntire had the Contract canceled the following Monday. Mr. Jimmy McEntire testified that Mrs. Guido came in again the following Friday looking for more time, and he informed her the Contract had been canceled.

The Debtors filed bankruptcy under Chapter 13 on April 11, 2006. They listed the Property on their schedules, and listed McEntire as a secured creditor. The Debtors also provided for the contract payments on the Property in their chapter 13 plan as payments on a long term secured debt. On May 11, 2006, McEntire filed its *Objection to Confirmation* in which it objects to the Property's inclusion in Debtors' bankruptcy estate and its treatment as a secured creditor.

## ANALYSIS

In bankruptcy, property interests are determined by applicable State law. *See Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) (property interests are created and defined by state law). The issue presented in this case is whether the Debtors have a legal or equitable interest in the Contract or the Property such that the Property can be included in their bankruptcy estate. Specifically, if the Contract is treated as a mortgage or "bond for title" under Arkansas law, McEntire would have been required to bring a foreclosure action to terminate the Debtor's interest in the Property. Further, even if the Contract is treated as an executory contract with a valid forfeiture clause rather than a mortgage, the Debtors may have an equitable defense that the right of forfeiture has been waived. That equitable defense would constitute an interest in property held by their bankruptcy estate. *See In re Hayes,* 101 B.R. 569, 571 (Bankr.E.D.Ark. 1989). Accordingly, the Court must first determine whether or not the Contract constitutes a mortgage under Arkansas law, and if not, the Court must next determine whether the forfeiture clause was waived by McEntire.

### A. Equitable Mortgage or Executory Contract with Forfeiture Clause.

Under Arkansas law, an installment real estate contract may in certain circumstances be treated as an equitable mortgage (or as a "bond for title" as such a contract is commonly referred to in the Arkansas cases). *See e.g., Robbins v. Fuller,* 148 Ark. 173, 229 S.W. 8, 10 (1921)

(holding that the effect of a bond for title contract was to create a mortgage under which purchaser became equitable owner). *See also Judd v. Rieff,* 174 Ark. 362, 295 S.W. 370, 372 (1927); *In re Jones,* 54 B.R. 697 (Bankr.E.D.Ark.1985) (Mixon, J.). However, not all contracts for the sale of land are to be construed as mortgages. *See Jarman v. Wolfe,* 1998 WL 75557, *3 (Ark.App.1998) (*citing Smith v. Robinson,* 13 Ark. 533, 1853 WL 542 (1853)).[3] Where a land sale contract contains a valid forfeiture clause where time is of the essence (either expressly or by implication)[4], the forfeiture clause may be enforced and the contract will not be considered a mortgage. *See White v. Page,* 216 Ark. 632, 226 S.W.2d 973, 975 (1950) (citations omitted) ("We have many cases recognizing that a purchaser's rights under an executory contract affecting real estate may be forfeited pursuant to the contract and without proceedings in law or equity."). The Court in White further explained:

> In *Three States Lumber Company v. Bowen, supra,* Chief Justice McCulloch said [95 Ark. 529, 129 S.W. 799]: 'While equity will not ordinarily enforce forfeitures, still, where the payment of the price of the land is by express letter of the contract made a condition upon which the sale depends, courts of equity will not refuse to follow the terms of the contract; for to fail to do so would be to make a contract for the parties which they had not themselves made.' It is therefore clear that our cases recognize the potential validity of a forfeiture clause in an executory contract for the sale of land.

In *Friar v. Baldridge, supra,* there was involved a contract for the sale of land, and the contract contained a forfeiture clause. Mr. Justice Frauenthal, speaking for the Court, said 'Parties may enter into a valid contract relative to the sale of land, whereby they may provide that time of payment shall be of the essence of the contract, so that the failure to promptly pay will work a forfeiture.' *Ish v. Morgan[McRae],* 48 Ark. 413, 3 S.W. 440; *Quertermous[Quetermous] v. Hatfield,* 54 Ark. 16, 14 S.W. 1096; *Block v. Smith,* 61 Ark. 266, 32 S.W. 1070.

In this case, the Contract contained a forfeiture clause which expressly stated that time is of the essence. The clause is similar to that upheld by Arkansas courts. *See White,* 226 S.W.2d at 974; *Jarman,* 1998 WL 75557, *1; *Humke v. Taylor,* 282 Ark. 94, 666 S.W.2d 394, 395 (1984); *Abshire v. Hyde,* 13 Ark.App. 33, 679 S.W.2d 214, 215–216 (1984). Accordingly, provided that McEntire is not found to have waived or acquiesced in the Debtors' breach, the Contract should be construed as an executory contract with a valid forfeiture clause and not as a mortgage or mortgage substitute.

### B. Waiver of Forfeiture Clause.

▮▮▮ Although an executory contract with a valid forfeiture clause may be enforced under Arkansas law, the seller may be found to have waived its rights under such clause. Judge James G. Mixon described waiver of forfeiture clauses under Arkansas law in *In re Hayes:*

> If time is of the essence in an agreement, failure to pay promptly will constitute a default for which the seller may

---

**3.** The *Jarman* Court also noted, "Although the distinction between the two has been described as one of form rather than substance, Glenn E. Pasgovel, Jr., *Mortgage Substitutes— The Law in Arkansas,* 9 U. Ark. Little Rock L.J. 433, 447 (1986–87), the supreme court

has continued throughout the years to draw this distinction."

**4.** Glenn E. Pasgovel, Jr., *Mortgage Substitutes—The Law in Arkansas,* 9 U. Ark. Little Rock L.J. 433, 445 (1986–87).

declare a forfeiture. *Vernon v. McEntire*, 232 Ark. 741, 746, 339 S.W.2d 855, 858 (1960); *Friar v. Baldridge*, 91 Ark. 133, 137, 120 S.W. 989, 991 (1909). However, forfeiture provisions may be waived by the conduct of the parties. Courts of equity will seize upon slight circumstances to indicate a waiver of the forfeiture provisions and prevent unjust enrichment. *Triplett v. Davis*, 238 Ark. 870, 872, 385 S.W.2d 33, 34 (1964); *Hatfield v. Mixon Realty Co.*, 269 Ark. 803, 807, 601 S.W.2d 894, 896 (1980)....

Whether a court of equity will enforce a forfeiture for default by the purchaser depends upon the circumstances of the case and the conduct of the forfeiting party. *Friar v. Baldridge*, 91 Ark. at 137, 120 S.W. at 991; *Souter v. Witt*, 87 Ark. 593, 600, 113 S.W. 800, 803 (1908). A seller can waive its right of forfeiture if it does not insist on strict compliance with the contract terms regarding prompt payment and repeatedly accepts delinquent payments. *Humke v. Taylor*, 282 Ark. at 98, 666 S.W.2d at 396; *Triplett v. Davis*, 238 Ark. at 872–73, 385 S.W.2d at 34–35; *Braddock v. England*, 87 Ark. 393, 395, 112 S.W. 883, 884 (1908); *Welch v. Cooper*, 11 Ark.App. 263, 267, 670 S.W.2d 454, 458 (1984). Granting an extension of time for payment without demanding strict compliance in the future has been held to constitute a waiver. *Vernon v. McEntire*, 232 Ark. at 746–47, 339 S.W.2d at 858; *Friar v. Baldridge*, 91 Ark. at 139, 120 S.W. at 992; *Banks v. Bowman[Bowman v. Banks]*, 83 Ark. 524, 527, 104 S.W. 209, 210 (1907). Failure to declare a forfeiture upon past defaults may constitute a waiver. *Goforth v. Eads*, 239 Ark. 861, 864, 394 S.W.2d 728, 730–31 (1965). Although a seller may have waived its right to declare a forfeiture by its past conduct, that right may be reinstated by the seller's providing the purchaser with clear and definite notice that a delinquency has occurred and allowing the purchaser a reasonable opportunity to pay the delinquent amounts before declaring a forfeiture. *Ashworth v. Hankins*, 248 Ark. 567, 573, 452 S.W.2d 838, 841–42 (1970); Note, *Land Contract–Waiver and Reinstatement of Forfeitures*, 24 Ark. L.Rev. 578 (1971).

101 B.R. 569, 571 (Bankr.E.D.Ark.1989). In sum, a seller may waive its rights under a forfeiture clause by failing to enforce it. However, the seller may reinstate its rights under the forfeiture clause by giving clear notice to the purchaser that it intends to do so. Some of the Arkansas cases cited below further illustrate this point.

For instance, in *Triplett v. Davis*, *supra*, the seller was found to have waived its rights under a forfeiture clause. In that case, a notice was sent regarding a delinquent annual payment one year, but no forfeiture was declared. The following year, a partial payment was made three days late but a delinquency remained and no notice was sent regarding the delinquency or a pending forfeiture. The delinquency was paid shortly thereafter bringing the balance current. When the following year's payment was not made, the seller gave written notice of the forfeiture but did not send any notice prior to that giving the purchasers a last opportunity to pay. The Arkansas Supreme Court found that "these circumstances had the effect of lulling the appellee into an assurance of another extension before declaring a forfeiture." 238 Ark. 870, 385 S.W.2d 33, 35.

On the other hand, in *Ashworth v. Hankins*, the Arkansas Supreme Court found that despite prior leniencies, a seller could enforce its forfeiture rights by providing the purchaser with "clear and definite no-

tice" that it would declare a forfeiture if payment was not made within a reasonable time. 248 Ark. 567, 452 S.W.2d 838, 841–842. In that case, the sellers sent five letters to the purchasers regarding their delinquent payments; the fourth of this series of letters stated that a forfeiture would occur if full payment was not made. The sellers then met with the purchasers and agreed to an extension. A fifth letter was mailed confirming the extended deadline. When payment was not made by that date, the sellers took possession of the property. *Id.* at 840. The Court found that despite prior conduct, the "specific granting of an extension after this deadline was no basis for [buyers] to believe that still further extension would be granted." *Id.* at 841. Further, the Court stated that, "waiver by conduct such as was involved here extends only to the right of forfeiture *without notice.*" *Id.* at 842 (emphasis added).

 Under the circumstances of this case, the Court finds that McEntire did not waive its rights under the forfeiture clause in the Contract. Although McEntire sent three notices regarding delinquent payments during the summer of 2005, and accepted a late payment in December 2005, McEntire sent a new notice on February 21, 2006, stating that the Contract would be forfeited if the Debtors did not catch up their payments. The Debtors did not pay during the time period provided. Further, although the Debtors received a short extension from Mr. Jimmy McEntire, they also failed to pay by that date, and the Contract was subsequently terminated as was provided for in the February 21, 2006 notice. The Debtors were clearly on notice that the Contract would be canceled if they did not pay. The Court finds that these circumstances, like those present in the *Ashworth* case, do not constitute a waiver of the forfeiture clause.[5]

 Finally, the Court finds that although equity abhors a forfeiture, *Triplett v. Davis,* 385 S.W.2d at 34, the facts of this case do not allow Debtors to make a viable equitable argument. The Debtors made total payments of approximately $1,660 on a purchase price of $37,350. The Debtors never paid property taxes and did not insure the property as required under the Contract. Further, the Debtors received $4,000 "rocking" the Property which devalued the Property. The Court also notes that while the Debtors' invested $6,000 building a dwelling on the Property, Mr. Jimmy McEntire, a licensed realtor, testified that it would be easier to sell the Property if the trash, old vehicles and dwelling were moved. The Court finds Mr. McEntire's testimony credible, and having reviewed the photos of the Property introduced into evidence, finds that the dwelling is not a significant improvement on the Property. Accordingly, under the facts presented here, equity will not prevent a forfeiture.[6]

## CONCLUSION

The Court finds that the Contract at issue is not a mortgage or mortgage sub-

---

**5.** *Compare Humke v. Taylor,* 282 Ark. 94, 666 S.W.2d 394, 395 (1984) ("The sellers never insisted upon strict compliance with the terms of the agreement and instead accepted delinquent payments over a period of six years. In those circumstances, equity will not permit them suddenly to change their attitude and abruptly seek to rescind the contract.").

**6.** *Compare Triplett v. Davis, supra,* 385 S.W.2d at 34–35 (Court found in favor of purchasers where six of fifteen annual payments had been promptly paid, and the taxes and insurance had been paid. Additionally, the purchasers offered to pay the full balance on the Contract, which was less than half of the original purchase price, but seller insisted on canceling the Contract.).

stitute, but is an executory contract with a valid forfeiture clause. Further, the Court finds that the forfeiture clause was not waived and should be enforced. Accordingly, the Contract was canceled prior to the Debtors' bankruptcy filing, and they have no legal or equitable interest in the Property. The Debtors must, therefore, modify their schedules and Chapter 13 plan to remove the Property and McEntire as a secured creditor.

**IT IS SO ORDERED.**